### KNIGHTS OF MACCABEES *v.* ANDERSON.
### Opinion delivered June 24, 1912.

1. INSURANCE—QUESTIONS IN APPLICATION—USE OF INTOXICANTS.— Questions in an application for a life insurance policy, "Have you at any time used alcoholics or narcotics to excess?" "What is your daily consumption of wines, spirits or malt liquors?" refer to the habitual use of intoxicants, not to their occasional use; and to their use at the time of the application, and not to any subsequent time. (Page 420.)

2. INSTRUCTIONS—REPETITION.—It was not error to refuse to repeat instructions. (Page 423.)

3. APPEAL AND ERROR—REFUSAL OF INSTRUCTION—MATTER OF COMMON KNOWLEDGE.—It was not prejudicial error to refuse a request for instructions which contained a self-evident truth. (Page 423.)

4. INSURANCE — FRATERNAL INSURANCE — STATUTORY DAMAGES.— Acts 1905, p. 307, imposing damages and attorney's fees on insurance companies under enumerated conditions, applies only to fire, life, health and accident insurance companies, and not to fraternal benefit societies. (Page 423.)

5. STATUTES—ADOPTED CONSTRUCTION.—In adopting a statute of another State, it will be presumed that the Legislature intended to adopt the construction which the highest court of that State had previously placed upon it. (Page 424.)

6. INSURANCE—CONSTRUCTION OF STATUTES.—Under act of May 8, 1899, providing that fraternal benefit societies, orders or associations, "shall be exempt from the provisions of all insurance laws of this State, and that no law hereafter passed shall apply to said societies, orders or associations unless it be expressly designated therein," acts regulating insurance companies will be held not to apply to benefit societies unless expressly mentioned. (Page 424.)

Appeal from Cross Circuit Court; *Frank Smith,* Judge; reversed in part.

*F. Zimmerman,* for appellant.

1. The warranty—"Have you at any time used alcholics to excess?" Answer, "No"—properly construed, means not a *habitual* excessive use of intoxicants, as held by the trial court, but refers to a single excessive use of intoxicants, if shown, as well. Where an insured puts himself within the exception, there can be no recovery. 15 L. R. A. (N. S.) 206; 112 La. 574, 66 L. R. A. 322. If Anderson had in some instances use alcholics to excess, as the evidence shows he did, it was his duty to disclose this fact to the insurer. 47 S. W. 64; 33 La. Ann. 1353; 71 Ark. 299; 81 Ark. 207; 89 Ark. 232; 111 Ill. 284; 76 Cal. 101, 18 Pac. 125.

2. The court correctly charged the jury that, if they found that Anderson was under the influence of liquor at the time of his death, appellant would not be liable, even though it was not shown that death was caused in consequence of intoxication. 137 Mo. App. 399; 109 Ky. 661; 66 N. Y. 441; 94 Ala. 434. But it erred in refusing to charge the jury that, if he was intoxicated when last seen on the night of his death, the law assumes that this condition continued until the effects of the intoxication wore off, and that they might call to their assistance their general knowledge of human affairs in determining when he ceased to be intoxicated. 80 Vt. 526, 68 Atl. 655, 15 L. R. A. (N. S.) 206; 73 C. C. A. 668.

3. It was not necessary that appellant should produce direct evidence on every point involved in order to establish its theory of the death of Anderson, or any one of its theories. A preponderance of evidence was sufficient, and the court erred in refusing to charge the jury that, if all the facts connected with Anderson's last hours of life led them to believe that his death was caused in the way, or any one of the ways, pleaded by the defendant, they could rely upon circumstantial evidence and their general knowledge of human conduct under given conditions; and if upon the whole case they found that he came to his death in any one of these ways, they should find for the defendant. 73 C. C. A. 668.

4. The court erred in assessing damages and attorney's

fee against the appellant. The complaint does not ask for it, and the act on which such judgment was based does not refer to or include fraternal benefit associations. 94 Ark. 583; 112 Tenn. 158.

*O. N. Killough,* for appellee.

Anderson is not shown to have used alcohol to excess prior to the date of his application; that he was not at the time of his death to any extent under the influence of intoxicants. The instructions as given were correct.

There was no error in assessing 12 per cent. penalty. 86 Ark. 121; 92 Ark. 378.

FRAUENTHAL, J. This is an action instituted upon a certificate or policy of insurance issued upon the life of Elijah Anderson, and in which his wife, the appellee, is made the beneficiary. The appellant resisted recovery upon the alleged grounds, (1) that the assured had, in his application for insurance, made false statements, the truth of which he had warranted, thereby avoiding the policy; and (2) that by the laws of the association it was exempted from liability, (a) because the insured was addicted to the intemperate use of intoxicating liquors and was under the influence thereof at the time of his death, and (b) because the death occurred while he was engaged in a foolhardy undertaking. The trial resulted in a verdict in favor of appellee for the face of the certificate and interest, for which the court rendered judgment. In addition thereto, it rendered judgment for damages and attorney's fee, under the provisions of the act of 1905.

The appellant is a fraternal beneficiary association composed of a supreme body or lodge, known as the Supreme Tent, and subordinate lodges or tents, one of which was located at Cherry Valley, Arkansas. The insured became a member of the subordinate lodge at Cherry Valley, and made written application for insurance in the order; and a certificate of insurance was issued thereon in May, 1908. By the terms of the certificate, the application, medical examination and by-laws of the order were made a part of the contract of insurance.

The written application contained certain answers to questions propounded by the medical examiner of the order, which, we think, were material to the risk, and the truth of

which was expressly warranted by the insured.    The appellant insists that the evidence shows that the insured in his written application made false answers to the following questions propounded to him as to his use of intoxicating liquors: "No. 7. Have you at any time used alcoholics or narcotics to excess?" To which he answered, "No." "What is your daily consumption of wines, spirits or malt liquors?" To which he answered, "No, sir; none."

The testimony on the part of the appellant tended to prove that prior to the date of said written application Anderson drank whisky on different occasions, and had been intoxicated. The testimony adduced by the appellee tended, however, to prove that he had drunk whisky on one occasion, upon the advice of a physician, when he was intending to have a tooth extracted, and had probably drunk such liquor on another occasion, but that he never drank at any other time prior to the execution of said application.

Upon this issue the court instructed the jury in substance that the truth of the answers to the above questions was warranted by the assured, and if they were in fact false there could be no recovery.    It further charged them that the answers related to the assured's use of intoxicants at the time the answers were made, and not at the time of his death, and referred to habitual use thereof, and not to the occasional or exceptional use of intoxicants.

We are of the opinion that the court committed no error in these instructions.    The question asking whether the insured had at any time used alcoholics to excess meant, we think, to ask whether he was wont or accustomed to or made a practice or was in the habit of drinking alcoholics to excess.    The above questions and answers are very similar to those made in the application for the policy involved in the case of *Metropolitan Life Insurance Co.* v. *Shane*, 98 Ark. 132.    In that case one of the questions propounded was, "Have you ever used alcoholic stimulants to any excess," and the answer was, "No."    In that case we said:    "From the language of the above questions and answers made by the insured in his application for this policy, we do not think that it was contemplated that the policy should become void because of the occasional use of intoxicants or because of the occasional excessive use thereof, but only

when such use or excess had become a habit by frequent repetition. This has been the construction adopted by this court of questions and answers made in applications for life insurance policies similar to those made in the application for the policy involved in this case." *Franklin Life Ins. Co.* v. *Galligan,* 71 Ark. 295; *Mutual Reserve Fund Life Assn.* v. *Cotter,* 81 Ark. 205; *Des Moines Life Ins. Co.* v. *Clay,* 89 Ark. 231. See, also, *Knickerbocker Life Ins. Co.* v. *Foley,* 105 U. S. 350.

It appears from the testimony that, about 9 o'clock on the morning of November 13, 1910, the dead and mangled body of insured was found on a railroad track near a path leading to his home. He lived near a small settlement known as Mersham's Switch, where there were two stores. On the evening before his body was found, deceased went to one of these stores, owned by W. B. Leonard, in order to make some purchases. The testimony tended to prove that at this place the deceased took a drink of whisky, and probably diluted alcohol, with the proprietor of the store and other men there congregated. When the store was closed, the proprietor engaged in an altercation with him, which resulted in a fight in which deceased cut Leonard and Leonard knocked deceased down. The testimony is in conflict as to who was the aggressor in this difficulty. This occurred about 9 o'clock P. M. Some one crying out that deceased had cut Leonard, he ran away, and this was the last that was seen of him while alive.

It was the theory of appellant that the insured was drunk, and was killed while attempting to get on a moving train in order to escape, or while lying down on the track in a drunken stupor. Counsel for the appellee, howvver, contends that the testimony shows that the proprietor of the store drank heavily, and that deceased only took one drink, which did not affect him; that the proprietor quarreled with the deceased over the purchase of some goods, and was the aggressor in the fight which ensued; that the deceased, in fear of injury at the hands of him and his friends, ran away and thereafter met with violence at the hands of others. He urges that the character of the injury and the fact that no blood was found on the railroad track where the body lay shows that the insured was not killed by the train.

Among the by-laws of the appellant order placing a limitation upon its liability were the following:

"Sec. 384. No benefit shall be paid on account of the death or disability of any member who is addicted to the intemperate use of intoxicating liquors, or who dies or becomes disabled from the intemperate use of intoxicating liquors.

"Sec. 385. No benefit shall be paid on account of the death of a member whose death occurs while such member is to any extent under the influence of intoxicating liquors.

"Sec. 383. No benefit shall be paid on account of the death or disability of a member while engaged in or participating in any unlawful or foolhardy undertaking."

Relative to the issues made by the testimony applicable to these by-laws, the court instructed the jury as follows: "2. If you find from the proof that Anderson was intoxicated on the night of his death, and that he would not have been killed had he not been intoxicated, then your verdict will be for the defendant." "3. If you find from the preponderance of the evidence that Anderson was intoxicated at the time of his death, then, whether such intoxication had any connection with producing his death or not, your verdict will be for the defendant." The court also instructed the jury in effect that if the assured came to his death while engaged in or participating in any unlawful or foolhardy undertaking, there could be no recovery.

The appellant asked the court to instruct the jury as follows: "The court charges you that if you find from the evidence that Elijah Anderson was intoxicated when last seen on the night of his death, then the law assumes that this condition continued until the effects of the intoxication wore off, and on this point you may call to your aid your general knowledge of human affairs, to determine when Anderson ceased to be intoxicated." It also made a request that the court instruct the jury that if any of the theories set out in its above defense as to the manner of Anderson's death was true there could be no recovery, and that in determining such question they might rely upon circumstantial evidence and their general knowledge of human conduct under given conditions. The court refused these requests, but instructed the jury that the burden was on the defendant to establish by a fair preponderance of the evi-

dence the truth of any theory upon which it relied to defeat a recovery, and also instructed them as follows: "It is not necessary, however, that there be direct or positive evidence to this effect. It would be and is sufficient that the evidence is either direct or circumstantial, provided that evidence, whether direct or circumstantial, fairly preponderates that death did result in some one of the three ways just stated. But a mere conjecture that if it did not occur in one of these ways it did occur in another would not be sufficient. In the manner stated, the fact must appear and be found by you from a consideration of the evidence in the cause."

We are of the opinion that, while it might not have been improper to have given to the jury the instructions requested by the appellant, still the court committed no prejudicial error in refusing to do so. The statement in the instruction requested by appellant that, if Anderson was intoxicated when last seen, the law would presume that he would continue in that condition until his intoxication wore off is but a self-evident truth that the jury must have known, and therefore no prejudice could have resulted from the failure to so state. The other requests made by appellant, we think, were sufficiently covered by the instructions given by the court.

We are of the opinion, however, that the court erred in adjudging damages and attorney's fees against the appellant. This was done by virtue of the provisions of the act of the General Assembly, approved March 29, 1905, (Acts of 1905, p. 307). The appellant is a fraternal beneficiary association, and was doing business in pursuance of section 4351 *et seq.* of Kirby's Digest. The act of 1905 imposing damages and attorney's fees upon insurance companies under certain conditions only applies to fire, life, health and accident insurance companies; and the question is whether a fraternal beneficiary association issuing certificates of insurance upon the lives of its members is an insurance company within the terms of said act. It has been held that this act is highly penal, and does not apply to any loss or company not therein expressly named.

In the case of *Home Fire Ins. Co.* v. *Stancill*, 94 Ark. 578, it was held that the act did not apply to a cyclone loss or a cyclone insurance company. In the case of *Fidelity & Casualty Ins. Co.* v. *Dorough*, 107 Fed. 389, it was held that a statute

of Texas similar to the above act, and not naming an accident insurance company specifically therein, did not apply to such company.

It appears that the provisions of the above act of 1905 are identical in every essential particular with article 3071 of the Revised Statutes of Texas, except that the statute of Texas applies only to life and health companies. It is almost a literal copy of the Texas statute, and is in effect an adoption thereof. In the case of *American Legion of Honor* v. *Story,* 97 Tex. 264, the Supreme Court of the State of Texas in construing the Texas statute held that the American Legion of Honor was a fraternal beneficiary corporation engaged in the business of issuing policies upon the lives of persons who might become members of the order, and, not being a life or health insurance company, was not within the terms of the Texas statute imposing the penalty upon such companies. In that case it was also said that fraternal beneficiary corporations were by another provision of the statutes of Texas exempted from the general provisions of the statutes of that State applicable to stock insurance companies. By the act of the General Assembly of Arkansas, approved May 8, 1899, it is provided in reference to fraternal beneficiary orders of the character of appellant that "such orders, societies or associations shall be governed by this act, and shall be exempt from the provisions of all insurance laws of this State, and no law hereafter passed shall apply to said societies, orders or associations unless it be expressly designated therein." Kirby's Digest, § 4352.

The decision of the Supreme Court of Texas in the case of *American Legion of Honor* v. *Story, supra,* was made on January 31, 1904, and prior to the passage of said act of March 29, 1905, imposing a penalty on insurance companies in this State. This being the construction placed upon the statute by the highest court of Texas, from which our statute is adopted, we think that it was the intention of the Legislature that our statute should be understood and applied in accordance with that construction.

A benefit society, such as appellant's order, has a dual nature: While it is a business organization, it is also a social organization or club of congenial associates. In the majority of the States such societies are exempted from the oper-

ation of laws applicable to stock insurance companies. The Legislature enacting the statute of 1905 knew of the provision of the prior statute exempting these societies and orders from the provisions of laws relating to stock insurance companies. By failing to expressly name such societies, orders or associations in the act of 1905, we are of the opinion that it was the intention of the Legislature not to make said act applicable to them. See also Cooley's Briefs on the Law of Ins., 3886; *Supreme Council American Legion of Honor* v. *Larmour,* 81 Tex. 71.

We are therefore of the opinion that the court erred in allowing the damages and attorney's fees adjudged against the appellant, but that in all other respects the judgment is correct. So much of the judgment as allows the recovery of damages and attorney's fees is reversed, and the cause of action as to those items is dismissed. In all other respects the judgment is affirmed.