MALONEY *v.* MARYLAND CASUALTY COMPANY.

Opinion delivered May 18, 1914.

1. INSURANCE—CONTRACT—CONSTRUCTION.—The contract in a policy of insurance is always to be construed most strongly against the insurance company, because it prepares the contract of insurance. (Page 181.)

2. INSURANCE—ACCIDENT INSURANCE—NOTICE.—Although an accident insurance policy provides that notice of an injury must be given the company as soon as reasonably can be done after an accident, the beneficiary in the policy will not be barred from recovery, when the deceased did not give notice of the injury, although he lived some time after receiving the same, and where the beneficiary did give notice within two weeks after deceased's death, which was as soon as she discovered that deceased had such a policy. (Page 181.)

3. INSURANCE—ACCIDENT INSURANCE—DEATH—PROXIMATE CAUSE.—In an action on an accident insurance policy, it is error to charge the jury that deceased must have come to his death only as the result

of the injury, and that there can be no recovery unless the accident was the exclusive and independent cause of his death. (Page 183.)

4. ACCIDENT INSURANCE—"ACCIDENTAL" DEATH.—If an injury occurs without the agency of the insured, it will be held to be "accidental," even though it may be brought about designedly by another porson. (Page 183.)

5. INSURANCE—WARRANTY BY INSURED.—Where in an application for accident insurance the applicant stated "my habits of life are correct and temperate. I am neither partially or wholly blind, * * * no exceptions," the same will not be construed as a warranty by the applicant. (Page 184.)

6. INSURANCE—APPLICATION—KNOWLEDGE OF AGENT—ESTOPPEL.—Where an application for accident insurance was written up by the agent of the insurance company, and the answers were written by the agent without consulting the assured, the company is chargeable with the knowledge of its own agent, and is estopped from denying that which its own agent has asserted to be true. (Page 184.)

7. EVIDENCE—ATTENDING PHYSICIAN—DUTY TO OBJECT.—Although the testimony of an attending physician is incompetent, its introduction must be objected to, and in the absence of an objection, its admission is not prejudicial. (Page 184.)

Appeal from Drew Circuit Court; *James R. Cotham,* Special Judge; reversed.

### STATEMENT BY THE COURT.

Mrs. Jennie Maloney instituted this action against the Maryland Casualty Company to recover upon a policy of accident insurance in which she was named as the beneficiary. The facts are as follows:

The policy was issued to Edward S. Maloney, the husband of Jennie Maloney, on the 12th day of January, 1912, for a period of three months. Before the policy expired, it was renewed for an additional period of three months. The policy insured Edward S. Maloney against bodily injuries, effected independently and exclusively of all other causes, through external, violent and accidental means. The policy also contained the following clause:

"Subject to its terms, limits and conditions, this policy covers the assured in the event of death or disability due to freezing, hydrophobia, gas or poison (suicide, sane

or insane, or any attempt thereat, not included) ; likewise in event of death or disability from septicemia or blood poisoning due directly to a bodily injury sustained while this policy is in force.''

Section 11 of the policy under the title of "Agreements," reads as follows, towit:

"11.    Written notice must be given to the company at Baltimore, Maryland, or to the agent countersigning this policy, as soon as may be reasonably possible, of any injury for which a claim is to be made, with full particulars and full name and address of the assured or beneficiary as the case may be.    Affirmative proof of death, or loss of limb, or sight, or duration of disability must be furnished to the company within two months from the time of death, or loss of limb or sight, or duration of disability for which the company is liable.    No suit for recovery hereunder may be brought until after three months from the date of filing final proofs at the company's home office, nor brought at all unless the same shall be instituted within one year from the time of death, or loss of limb, or sight, or termination of disability for which the company is liable.    Claims not brought in accordance with these requirements will be forfeited to the company.''

E. S. Maloney resided at Monticello, Arkansas, and in April, 1912, he was at Russellville.    While there he was stricken with acute inflammatory rheumatism, and for a period of three weeks from April 23, 1912, he was confined to his bed there, and was then removed to a hospital at Hot Springs, Arkansas.    He was a very large man, and lay on his back nearly all of the time.    About a week and a half before his removal, his nurse, while attempting to place a bed-pan under him, let it slip and strike him.    He cried out at the time that he was hurt. The bed-pan struck him at the lower end of his backbone.    He was removed from the hospital at Hot Springs to his home at Monticello, and was treated by a physician there some fifteen or twenty days before his death. His death occurred on the 15th day of July, 1912.    The

physician who treated him just prior to his death testified that he died from blood poison, and that the blood poison originated from a sore on the lower part of his spine right at the upper end of the coccyx bone; that the sore extended higher up the longer he lived, and that the end of the coccyx bone seemed to be the center of the sore; that the coccyx bone is the bone next to the spinal column. In short, the physician testified that he died from blood poison, which resulted from the abrasion caused by the sharp end of the bed-pan striking his coccyx bone.

The plaintiff did not know of the existence of the policy sued on until about two weeks after her husband's death. As soon as she learned of its existence, she notified the company of her husband's death, and, within the time prescribed in the policy, made proof of his death and sent it to the company.

Evidence was adduced in behalf of the defendant tending to show that there was no abrasion whatever on the insured's back as a result of the bed-pan striking him; that the sore described by the physician who treated him just prior to his death was a bed sore, which was caused by the insured lying on his back so long. In short, the testimony of the defendant was to the effect that the blood poisoning which caused Maloney's death did not result from the bed-pan striking him, as stated by the witnesses for plaintiff. Other testimony will be referred to in the opinion. The jury returned a verdict for the defendant, and the plaintiff has appealed.

*James C. Knox* and *Patrick Henry,* for appellant.

1. Under the holding of this court in the Meyer case, 106 Ark. 91, appellee would be liable, notwithstanding the deceased was afflicted with a disease, if the death resulted when it did on account of the aggravation of the disease from accidental injury.

The trial court's theory of the law as expressed in the instructions given is in direct conflict with the opinion in that case.

2. As to the burden of proof, it was only incumbent on appellant to prove that the injury was the result of

external, violent and accidental means, and when that was done the burden shifted to the appellee to show that the insured in fact died from other causes.   73 S. W. 592.

3. The provisions in the policy as to notice, contemplated two kinds of notices, one where the injury is other than those named in the last sentence, and the other those mentioned in the last paragraph thereof.   85 Fed. 401; 27 S. W. 436.

Want of notice is purely a matter of defense, to be specially pleaded, and the burden is on the defendant to show a forfeiture on that ground.   53 Pac. 242; 13 N. E. 604; 13 Gray 431; 71 Pac. 423; 16 N. Y. Supp. 27.   Even if the burden was on appellant to establish the fact of having given the notice, there is no dispute in the evidence, and where the evidence as to the time notice was given is not disputed, it is for the court, and not for the jury, to say whether it was given in a reasonable time. 27 S. W. 436; 8 Gray, 33; 24 N. E. 1041; 17 N. Y. 609; 12 N. E. 315.

4. The fourth instruction is erroneous.   There was no burden on appellant to show that disease was not an indirect cause of the death, but it was incumbent on appellee to show a substantial proximate connection between the disease and the death.   73 S. W. 592.

5. Instruction 7 was patent error.   An injury resulting from a cause not the design of Maloney himself was accidental within the meaning of the policy.   17 So. 2; 91 N. W. 135; 60 S. W. 492; 16 S. W. 723; 40 S. W. 1080; 26 Pac. 762; 8 S. W. 570; 28 S. W. 877; 61 N. W. 485; 36 S. W. 169; 68 Fed. 825.

6. The court erred in the ninth instruction, charging the jury that deceased warranted his habits of life to be correct and temperate, and directing the jury to find for the defendant if the evidence showed that his habits were not temperate.   The words "no exceptions" appearing at the conclusion of the warranty clause qualify only the last sentence, and can not be construed to qualify the first sentence in any way.

The application being on a printed form furnished by the company, its language will be construed most strongly against the company. 1 Cyc. 245; 65 Ark. 59; 38 Fed. 19; 60 Atl. 180; 115 N. W. 869.

Moreover, the company's agent, as he testified, drew up the application for Maloney himself, and the company is estopped from setting up this defense. 41 S. W. 1093, 64 Ark. 253; 13 S. W. 799, 53 Ark. 215; 40 N. W. 469; 69 N. Y. 128; 79 S. W. 733; *Id.* 119; 85 S. W. 103; 13 Wall. 222; 36 N. Y. 550; 42 N. Y. S. 52.

*Williamson & Williamson,* for appellee.

Since the evidence conclusively showed that no notice of the injury was ever given, or opportunity afforded to investigate, and that no notice was given of any kind until after Maloney's death, and since the policy stipulated that noncompliance with the requirements as to notice would forfeit the policy, appellee was, as a matter of law, entitled to a directed verdict. Hence, the judgment should be affirmed, regardless of whether or not errors occurred in the trial. 4 Cooley's Briefs on Law of Insurance, 3570; 1 Cyc. *et seq.; Id.* 276, 277, cases there cited.

The notice of accident, as provided by the terms of the policy, is a condition precedent to recovery. 197 Mass. 101, 14 Am. & Eng. Ann. Cas. 209, and authorities collated in note at page 292; 71 Ark. 126; 87 Ark. 171.

In this case the stipulation for forfeiture is in the contract, which brings it within the rule laid down in *Hope Spoke Company* v. *Maryland Casualty Company,* 102 Ark. 11, which is in accord with general authority. 176 Mo. 253, 75 S. W. 1102; 88 S. W. 127; 83 Pac. 1015; 4 Cooley's Briefs, 3457.

There can be no force in the contention that in the event of the death of the insured no notice need be given. 142 Fed. 653-659.

HART, J., (after stating the facts). Counsel for defendant contend that the judgment must be affirmed, regardless of the fact of whether the court committed error in instructing the jury. They base their contention upon

the ground that the notice of accident, as provided by the terms of the policy, is a condition precedent to recover, and that notice was not given within a reasonable time after the accident happened; but we can not agree with them in this contention. It is true the accident happened on the 23d day of April, 1912, and that the insured remained conscious until the date of his death, on July 15, 1912, and that no notice was given until the 31st day of July.

In the case of *Western Commercial Travelers Assn. v. Smith*, 85 Fed. 401, the policy provided that "in case of any accident or injury for which claim is to be made under this certificate, or, in case of death resulting therefrom, immediate notice shall be given in writing, with full particulars of the accident, and that failure to give such notice would invalidate the claim. The court held that two classes of notices were intended, one an immediate notice of accident or injury when not resulting in death, and the other an immediate notice of death resulting from such injury, the latter to be given by the beneficiary, and that a notice so given in the latter case was sufficient, though no notice of the injury was given before death. See also *McFarland* v. *U. S. Mutual Accident Assn.*, 27 S. W. (Mo.) 436.

Counsel for defendant contend that the above cited cases are not in accord with reason and authority; and in support of their position they cite the case of the *Travelers Insurance Co.* v. *Nax*, 142 Fed. 653, where the Circuit Court of Appeals of the Third Circuit held:

"Where an accident insurance policy providing for the payment of a weekly indemnity to the insured in case of an accidental injury, and the payment of the amount of the policy to a named beneficiary in case of his death from such an injury, made it an express condition that 'immediate written notice' should be given to the company 'of any accident and injury for which claim is made,' such proviso required notice to be given within a reasonable time; and where the insured lived for seventy-two days after an accidental injury, during which time

he was in full possession of his faculties, his failure to give any notice of the accident before his death, without any excuse therefor appearing, as a matter of law defeated any right the beneficiary would otherwise have had to recover on the policy for his death, which was dependent on such notice as fully as the right of the insured to recover benefits in his lifetime.''

An attempt is made by the court in that case to distinguish it from the policy in the case of the *Western Commercial Travelers Assn.* v. *Smith, supra.* But we do not agree with the reasoning of the court in the Nax case. Forfeitures are not favored in the law; and this principle is peculiarly applicable to policies of insurance, where the contract is always to be construed most strongly against the insurance company because it prepares the contract of insurance. This principle is too well settled in this State to require a citation of authority to support it. It is a cardinal canon of construction of contracts that the court should put itself in the place of the parties to the agreement and then consider how its terms affect its subject-matter, and thereby ascertain the intent of the parties. Under the policy sued on in this case, the beneficiary had no claim until the death of the assured. Therefore, there must be no good reason to require her to give notice of the accident or injury before death occurred and before her claim arose. She could not know whether she had a claim until after her husband's death; and she was not required to give notice of the accident on account of which claim arose before she knew whether or not it would come into existence. Moreover, the plaintiff did not know that her husband had the policy sued on until after she found it among his papers, about two weeks after his death; and she at once then gave notice to the company of her claim under the policy. The policy required that notice must be given as soon as may be reasonably possible of any injury for which a claim is to be made. The undisputed evidence shows that the plaintiff did this

a soon as she learned of the existence of the policy after her husband's death.

In the case of *Cady* v. *Fidelity & Casualty Company of New York,* 17 L. R. A. (N. S.) 260, the Supreme Court of Wisconsin, in discussing this precise question, said that service of notice by a beneficiary as soon as practicable after obtaining knowledge of the existence of the policy is sufficient. Several well considered cases are cited which support the principle there announced.

Counsel for plaintiff also assign as error the action of the court in giving instruction No. 4 at the request of the defendant; and in this contention we think they are correct. The instruction reads as follows:

"The court instructs the jury that if they find from the evidence that the deceased, Edward S. Maloney, came to his death as the direct or indirect consequence of disease or that his death was caused wholly or in part by bodily infirmities or diseased condition of the body and that the alleged accident or injury was not the exclusive and independent cause of his death, then your verdict will be for defendant."

In the case of *Fidelity & Casualty Co.* v. *Meyer,* 106 Ark. 91, the court held:

"When an accident insurance policy limits liability to 'bodily injuries sustained through accidental means resulting directly, independently and exclusively of all other causes of death,' and it appears that death resulted from an aggravation of a latent disease to which the deceased was subject, an instruction is correct to the effect that the defendant insurance company is liable, under the contract, if death resulted when it did on account of the aggravation of the disease from the accidental injury, even though death from the disease might have resulted at a later period, regardless of the injury."

In the case of *French* v. *Fidelity & Casualty Company of New York,* 17 L. R. A. (N. S.) 1011, the Supreme Court of Wisconsin held that death from blood poisoning following a slight accidental abrasion of the skin is within an accident insurance policy against bodily inju-

ries sustained through external, violent and accidental means, independently of all other causes.

Here the proof on the part of the plaintiff shows that the insured received an accidental injury to the coccyx bone by his nurse striking it while he was attempting to place a bed-pan under him; that an infection later on started at the place where the bed-pan struck him, and that he died thereafter from blood poisoning. From this testimony the jury might have found that, but for the accidental injury, there would have been no cause for infection, and that there might have been an abrasion of the skin through which the disease germs entered the insured's body and subsequently produced his death. If the jury found such a state of facts, the wound produced by the accident was the proximate cause of his death.

In addition to the above cases already cited, see *Cary* v. *Preferred Accident Insurance Company,* 5 L. R. A. (N. S.), (Wis.) 926, and case note.

The court, at the request of the defendant, gave instruction No. 8, which is as follows:

"The court instructs the jury that if Maloney's death was not the result of the alleged accident alone, but was due to both the accident and a disease of which he was suffering, then there is no liability on the part of defendant and your verdict will be for defendant."

This instruction is erroneous for the reason assigned in discussing instruction No. 4.

We also think the court erred in giving instruction No. 7 at the request of the defendant. The instruction is as follows:

"If the jury find from the evidence that the injury to Maloney was the result or effect which was the natural and probable consequence of an act or course of action intended by those waiting upon Maloney, then this can not be said to be produced by accidental means, and your verdict will be for the defendant."

If an injury occurs without the agency of the insured, it may be logically termed "accidental," even though it may be brought about designedly by another person. 2

Bacon on Benefit Societies and Life Insurance (3 ed.) § 482.

The court also erred in giving instruction No. 9. It is as follows:

"The court instructs the jury that as part of the contract sued on, Edward S. Maloney, the assured, warranted that his habits of life were correct and temperate, and if the jury find from the evidence that said Edward S. Maloney's habits of life were not temperate as stated in the policy, then your verdict will be for the defendant."

The alleged warranty, the breach of which is here complained of by the defendant, is as follows:

"My habits of life are correct and temperate. I am neither partially or wholly blind, deaf, crippled, lame, paralyzed, nor have I ever been subject to epilepsy, fits, vertigo, or sleep walking, and in all regards I am in sound condition mentally and physically, except as follows: No exceptions."

In the application of the rule that the policy must be construed as favorably as possible to the insured because it was written by the insurance company, we think that the words "no exceptions" refer to the sentence immediately preceding it. The first sentence of the section, towit, "My habits of life are correct and temperate," can not be construed as a warranty.

Moreover, the undisputed testimony shows that the application was written up by the agent of the insurance company, and that the answers were written by him without consulting the assured. Therefore, the company is chargeable with the knowledge of its own agent, and is also estopped from denying that which its own agent has asserted to be true. See *Peebles* v. *Eminent Household of Columbian Woodmen*, 164 S. W. 296, 111 Ark. 435.

It is also contended by counsel for plaintiff that the court erred in admitting the testimony of the attending physicians of the insured. The testimony was not competent if it had been objected to. *Mutual Life Insurance*

*Company of New York* v. *Owen,* 111 Ark. 554, 164 S. W. 720. The record shows, however, that no objection was made to the admissibility of this testimony; and in the absence of objection being made the testimony was competent.

Error is also assigned in the giving of other instructions; but we do not deem it necessary to set out the instructions complained of or to discuss them in detail. We think the principles of law applicable to a retrial of the case are sufficiently discussed already, and for the errors indicated in the opinion the judgment must be reversed and the cause remanded for a new trial.