WOODMEN OF THE WORLD LIFE INSURANCE SOCIETY *v.* SANDERS.

4-6120 145 S. W. 2d 28

Opinion delivered December 2, 1940.

*Dene H. Coleman,* for appellant.

*Dean Lindsay* and *E. M. Arnold,* for appellee.

HOLT, J. April 2, 1937, Hayden R. Sanders made application for a policy of life insurance in the sum of $1,000 with appellant company. Thereafter on April 20, 1937, a policy was issued to him in which his wife, Fannie L. Sanders, appellee, was named beneficiary. No medical examination was required. The insured Sanders died on March 29, 1939, and at the time of his death all premiums had been paid. Proof of death was made in apt time and payment of the amount named in the policy demanded. Upon the refusal of appellant to pay the claim, this litigation followed.

Appellant defended on the ground that the insured, Sanders, had made statements which were warranties in his application which were false and untrue and which, under the express terms of the policy, rendered it void. Upon a jury trial there was a verdict in favor of appellee for $900, the value of the policy, and this appeal followed.

The application contained the following provisions:

"I hereby consent and agree that this application, including the foregoing answers made by me under the headings 'Personal History' and 'Family History,' and all the provisions of the Constitution, Laws, and By-Laws of the Association, now in force or that may hereafter be adopted, shall constitute the basis for and form a part of any beneficiary certificate that may be issued to me by the Sovereign Camp of the Woodmen of the World, whether printed or referred to therein or not. . . .

"I hereby certify, agree and warrant that all the statements, representations, and answers in this application are full, complete and true, whether written by my own hand or not, and that any statements hereafter made by me for again becoming a member shall be warranties, and I agree that any untrue statements or answers made by me in this application, or in any application for again becoming a member, or any concealment

of facts in this application, intentional or otherwise, . . . shall make my beneficiary certificate void, and all rights of any person or persons thereunder shall be forfeited. . . .

"I further agree that inasmuch as only the president, medical director and secretary of the association have authority to determine whether or not a beneficiary certificate shall be issued to me, and as they act on the written statements and answers in this application, no statement or information given by or to any person soliciting or taking this application, or by or to any other person, nor any knowledge possessed by any such person, shall be binding on said association, or in any manner affect its liability, unless such statements or information be presented in writing to the president, medical director and secretary of said association at the home office prior to the issuance of the beneficiary certificate. . . ."

Under these provisions we think the answers to questions propounded to the insured in his application were warranties, and that the application became a part of the policy. This court so held in the recent case of *Woodmen of the World* v. *Brown,* 194 Ark. 219, 106 S. W. 2d 591, in considering provisions similar to these. If, therefore, the insured gave false answers to material questions, upon the truthfulness of which appellant had a right to rely before issuing the policy, then there could be no recovery in this case.

Among the questions propounded to the insured in his application, which appellant relies upon as being material and to which it insists the insured's answer was false, is question No. 7, as follows: "Have you within the past ten years suffered any mental or bodily disease or infirmity, or have you within that period of time, consulted or been attended by a physician for any disease or injury? No."

Appellant insists that the insured's answer to the question was false for the reason that the insured, Sanders, in January, 1931, was afflicted with "several decayed teeth, pyorrhea, trench mouth, chronic tonsilitis,

and chronic appendicitis," as was testified to by Dr. Hinkle on behalf of appellant.

When we look to the testimony as reflected by this record, we find that the insured's application was taken by Sam Stigall, appellant's agent, and that in addition to the insured and agent Stigall, there was present the appellee, wife of the insured. To the questions and answers in the application, we quote from the testimony of appellee as follows: "Q. What conversation occurred between the two men about filling in these answers at the time that application was signed? A. Well, Mr. Stigall asked him if he had been sick or had seen a doctor lately and he told him about seeing Dr. Hooper and getting some medicine for biliousness and Mr. Stigall says: 'Sign your name to that and I know the answer to all the rest of the questions because I have written them so many times'."

Appellant had issued three other policies on the application of this insured: One in 1932, one in 1933 and another in 1934, and two of these applications were taken by appellant's agent, Stigall. All of these policies, however, had lapsed for nonpayment of premiums prior to the issuance of the policy here in question.

It is earnestly contended that when we give to the testimony adduced on behalf of appellee, its strongest probative force, as we must do, the jury might have found from this testimony that when the application of the insured Sanders was taken by Mr. Stigall, appellant's agent, there was really but one question propounded to the insured pertinent here; that question No. 7 was not propounded to the insured and no answer given by him, but that the agent of appellant, after procuring the insured's signature to the application, filled in all the answers at a later date without further consultation with the insured, including the answer to question No. 7.

We agree with the appellee that the jury would have been warranted in so finding, in which event it would make no difference whether the answer to question No. 7, as well as the other answers to questions in the applica-

tion written in by appellant's agent, were true or false; the appellant would be bound by these answers and cannot avoid the policy if there were fraudulent conduct by its agent. This court has many times declared this to be the law controlling in such cases.

In *Maloney* v. *Maryland Casualty Company,* 113 Ark. 174, 167 S. W. 845, this court said: "Moreover, the undisputed testimony shows that the application was written up by the agent of the insurance company, and that the answers were written by him without consulting the assured. Therefore, the company is chargeable with the knowledge of its own agent, and is also estopped from denying that which its own agent has asserted to be true. See *Peebles* v. *Eminent Household of Columbian Woodmen,* 111 Ark. 435, 164 S. W. 296."

Again in *Brotherhood of Railroad Trainmen* v. *Long,* 186 Ark. 320, 53 S. W. 2d 433, it was said: "If the statements in the application relied upon as breaches of warranty are inserted by the agent of the insurer, without collusion or fraud on the part of the insured, the insurer is estopped to set up their error or falsity."

And in *Security Benefit Association* v. *Farmer,* 193 Ark. 370, 99 S. W. 2d 580, this court again said:

"In 32 C. J., p. 1333, the general rule is stated as follows: 'Where the facts have been truthfully stated to its agent but by his fraud, negligence, or mistake are misstated in the application, the company cannot, according to the generally accepted rule, after accepting the premium and issuing the policy, set up such misstatements in the application in avoidance of its liability, where the agent is acting within his real or apparent authority, and there is no fraud or collusion upon the part of the insured. Among the reasons given for this rule are: That the company assumes to draft the papers so as to meet its own views as to their requirements; that the agent is the agent of the company; that his knowledge will be imputed to the company; that the statements in the application are in fact his statements; that the company is estopped from controverting their truth; and that the evidence does not constitute an attempt to vary

a written contract by parol, although there is some authority to the contrary based on the theory that in making the application, the solicitor is acting as agent of the applicant, or that the introduction of evidence to show the fact would violate the rule excluding parol evidence to alter a written contract.'

"The same rule is stated in 14 R. C. L., p. 1174 in this language: 'It is the general rule that an insurance agent in making out an application for insurance acts as the agent of the insurer and not of the insured, and if the insured makes proper answers to the questions propounded the insurer cannot take advantage of a false answer inserted by its agent, contrary to the facts as stated by the applicant.' "

The questions of fact were settled in appellee's favor, by the jury, under proper instructions.

No error appearing, the judgment is affirmed.