WOODMEN OF THE WORLD LIFE INSURANCE SOCIETY
*v.* REESE.

4-7170                                                        176 S. W. 2d 708

Opinion delivered December 20, 1943.

*Rainey T. Wells* and *Jas. S. McConnell,* for appellant.

*Steel & Steel* and *Boyd Tackett,* for appellee.

532

KNOX, J. On August 1, 1940, appellant, a fraternal benefit insurance society, operating under the lodge system, issued its certificate of insurance on the life of Clyde M. Reese, for $2,000, designating his two minor children, Martha Lou Reese and Clyde Edwin Reese, as the beneficiaries thereunder. Insured died on May 29, 1942, in Howard county, Arkansas, where he had resided for many years. Proof of death was made to appellant, but payment was rejected, thereupon this action was instituted. Issuance of the certificate of insurance, the payment of premiums, the death of the insured and the proper presentment of the proof of death are all admitted. Appellant bases its defense upon certain answers made by insured to certain questions contained in the application which appellant contends constituted warranties, and alleges that the same were false. We quote such portion of appellant's answer as will fully disclose its defense:

"5. Defendant states that the said Clyde M. Reese in his application for membership in the defendant society executed and signed and agreed that the said application, the said certificate, the articles of incorporation, the constitution, the laws and by-laws and amendments legally adopted by said society, and the laws of the state of Arkansas governing such fraternal benefit societies should constitute the contract between the said Clyde M. Reese, his beneficiaries and the defendant society, and he, the said Clyde M. Reese, warranted that all the answers made by him and set out in his said application for such membership certificate were true and not false. Said agreement and warranty in said application is in words and figures as follows: 'For the purpose of securing the benefit certificate herein applied for, I hereby warrant that I have not been sick, except as stated herein; that I am now in sound bodily health; that I have no injury or disease that will tend to shorten my life; that I am not addicted to the use of intoxicating liquors, opium or other injurious drugs or substances. . . . I hereby consent and agree that this application, including the foregoing answers made by me under the heading "Personal History" and "Family History" and

all the provisions of the constitution, laws and by-laws of the society, now in force or that may hereafter be adopted, shall constitute the basis for and form a part of any benefit certificate that may be issued to me by the Woodmen of the World Life Insurance Society, whether printed or referred to therein or not.

"'I hereby waive the attaching of a copy of this application to said certificate; and I further waive the provisions of all statutory laws and court decisions in relations thereto; and I further waive for myself and beneficiaries the privileges and benefits of any and all laws which are now in force or may hereafter be enacted in regard thereto disqualifying any physician or nurse from testifying concerning any information obtained by him or her, either heretofore or hereafter, in a professional capacity; and I hereby expressly authorize such physician or nurse to make such disclosures . . . I hereby agree that the liability of the Society for the payment of benefits shall not begin until after the application shall have been accepted by the medical director, a benefit certificate issued thereon and personally delivered to me as provided in the constitution, laws and by-laws of said society have been complied with.

"'I further agree that inasmuch as only the president, medical director and secretary of the society have authority to determine whether or not a benefit certificate shall be issued to me, and as they act on the written statements and answers in this application, no statement or information given by or to any person soliciting or taking this application, or by or to any other person, nor any knowledge possessed by any such person, shall be binding on said society, or in any manner effect its liability unless such statements or information be presented in writing to the president, medical director and secretary of said society at its home office prior to the issuance of the benefit certificate.'

"6. That in the said application for said certificate under the heading of 'Personal History' questions were asked and answered as follows: '5. Have you ever used alcoholic liquors or taken treatment for liquor habit? Have you ever habitually used any drug or medicine,

534

opium, cocaine or other narcotics? If so, state which, when, to what extent and length of time taken? A. No.'

"Defendant states that the answer made by the said Clyde M. Reese to said question No. 5 is untrue and constitutes a breach of his warranty and that all his answers to questions should be true, and if false any certificate issued thereon should be null and void, and the society not be liable for any of the benefits of said certificate.

"That in truth and in fact the said Clyde M. Reese was at the time of signing the said application, and at the time of the delivery of said certificate sued on addicted to the use of alcoholic liquors and had taken treatment for such habit from Dr. E. V. Dildy, Dr. J. M. Proctor and Dr. H. King Wade.

"7. That also in said application for said certificate under the heading of 'Personal History', question No. 6 was asked and answer given as follows:

" '6. Have you ever been under observation, care or treatment in any hospital, sanatorium, asylum or similar institution? If so, state which, when, for what length of time. A. Yes, Michael Meagher Hospital, Texarkana, Texas. Operation hernia, Dr. J. K. Smith.'

"Also question and answer No. 7:

" '7. Have you within the past ten years suffered any mental or bodily diseases or infirmity, or have within that period of time consulted, been attended by or examined by a physician? If so, state which, when and give full particulars. A. No, except as stated in No. 6.'

"Defendant states that the answers to said questions made by the said Clyde M. Reese in said application to questions No. 6 and No. 7 are false and untrue; that in truth and in fact the said applicant had suffered of bodily disease of chronic alcoholism during said time and was so suffering at the time and had consulted and been treated by Dr. E. V. Dildy, Dr. J. M. Proctor for said disease and other diseases incident thereto.

"That such false answers constitute a breach of the warranty of the said application that such answers would be true and if not true there should be no liability of

the society for the benefits of said certificate, and that it should be null and void.

"8. That also in said application for the said certificate under the heading of 'Personal History' the following questions were asked and answers given by the said Clyde M. Reese: '12. Have you ever had any disease or injury other than those above mentioned? If so, give date, disease or injury, duration, name and address of physician. A. No.'

" '13. Have you fully recovered from any and all diseases or conditions referred to above. If not, Why? A. Yes.'

"The defendant states that the said answers to the said questions 12 and 13 are false and not true; that in truth and in fact the said applicant, Clyde M. Reese, was at the signing of said application then suffering from severe bodily disease and was then addicted to the use of alcoholic liquors, and was not in good health; that such false and untrue answers to the said questions constituted a breach of applicant's warranty contained in the said application and certificate; that said answers if untrue should void the certificate issued thereon."

Dr. E. V. Dildy, called as a witness for appellant, testified that during the past ten or twelve years of insured's life he had occasion from time to time to treat him—"at times for difficult breathing, sometimes for indigestion, sometimes for abdominal pains, and sometimes for complication of the liver." He admitted that he treated insured during his last illness, and filled out and signed the physician's statement in the proof of death, which showed cause of death as acute nephritis, but, in answer to a question therein propounded, he also stated that at his office for the past several years, near ten years, he had from time to time treated insured for "alcoholism and its usual sequences." In his testimony at the trial Dr. Dildy testified that he had treated insured for flu in 1939 or 1940, and was asked if he had treated him for alcoholism prior to that time, and answered "Yes for little complications that come up, not directly for alcohol, however. I never treated him purely for alcoholism."

The deposition of Dr. John Proctor of Hot Springs was taken on interrogations, and offered in evidence by appellant. He testified that the insured came to his office on August 5, 1939, for the purpose of procuring a prescription to take the Hot Springs' baths; that at such time insured was apparently under the influence of liquor and stated to the doctor that he took the same to relieve pain in his legs. Insured did not state that he was addicted to the use of alcohol; that he, the doctor, made only such examination as was necessary in order to prescribe the baths, and therefore would not know whether he was suffering from chronic alcoholism, or any other disease acute or chronic.

Appellant took the deposition of Dr. H. King Wade on interrogatories. Dr. Wade testified that insured came to his clinic in Hot Springs, Arkansas, February 11, 1941 (seven months after the date of the application), where he was examined by Dr. Adams, one of Dr. Wade's associates, and that he—Dr. Wade—carefully reviewed the case after the examination. Whether certain statements purportedly made by insured were made in the presence of Dr. Wade or only to Dr. Adams and reported to Dr. Wade is not made clear. Whether testifying from personal knowledge or from reports made by Dr. Adams, one of the statements attributed to the insured by Dr. Wade was that he, the insured, had drunk from three to five pints of wine daily for the previous five years. Dr. Wade stated that he found insured suffering from chronic alcoholism, early cirrhosis of the liver and chronic prostatitis.

Mrs. Reese, widow of insured, testified that she was with the insured both at the time he talked to Dr. Proctor and also Dr. Wade; that nothing was said in the presence of either Dr. Wade or Dr. Proctor relative to use by insured of intoxicating liquors.

Several citizens of the small town in which insured lived, and who knew him well, and saw him nearly every day, were called as witnesses. None of these witnesses regarded insured as being addicted to the use of alcohol, or even as being a drinking man. Some stated they did not know that insured ever at any time took a drink, while

others stated that they had known him to take a drink on rare occasions.

Mrs. Reese testified that her husband never at any time drank to excess, that he quit altogether the latter part of 1939, and did not drink again until the latter part of 1941; that he was not drinking at all at the time, and for sometime prior to and sometime after the insurance was obtained.

Officers of appellant testified that if answers in the application had conformed to the facts as later developed and disclosed by the testimony the insurance would not have been issued.

At the close of the testimony appellant requested the court to give the jury its proposed instruction No. 1, which was a peremptory direction to find for appellant, which request was refused.

It is argued that the answers set out in the application constitute warranties and not representations. Whether warranties or representations, the burden rested upon appellant to establish the falsity thereof. A verdict upon an issue of fact should not be directed in favor of the party who has the burden of proof with respect thereto, unless such fact is admitted, or is established by the undisputed testimony of one or more disinterested witnesses and different minds cannot reasonably draw different conclusions from such testimony. *Douglas* v. *Flynn*, 43 Ark. 398; *St. L., I. M. & M. R. R. Co.* v. *Coleman*, 97 Ark. 438, 135 S. W. 338; *Kesterson* v. *Hays*, 137 Ark. 592, 209 S. W. 721; *Smith* v. *McEachin*, 186 Ark. 1132, 57 S. W. 2d 1043; *Pickens* v. *Westbrook*, 191 Ark. 156, 83 S. W. 2d 830.

Unless, therefore, the falsity of these answers has been established by the undisputed testimony of disinterested witnesses, and such testimony is of such character that different minds could not reasonably draw any other conclusion than that such answers were false, then the trial court did not err in refusing to direct a verdict for appellant.

In testing the truth or falsity of the answers given, it is, of course, necessary to consider the import of the

questions to which they relate. Since these questions were prepared by appellant and made a part of the contract of insurance they must, notwithstanding the fact that appellant is a fraternal benefit society, be construed as like questions would be construed in any other insurance contract, that is, if ambiguous, favorably to the insured and beneficiaries and against the insurer. *United Order of Good Samaritans* v. *Reavis*, 186 Ark. 1143, 57 S. W. 2d 1052; *Maloney* v. *Maryland Casualty Co.*, 113 Ark. 174, 167 S. W. 845; *Benham* v. *American Central Life Ins. Co.*, 140 Ark. 612, 217 S. W. 462; *Fowler* v. *Union Aid Life Ins. Co.*, 180 Ark. 140, 20 S. W. 2d 611; *Sovereign Camp, W. O. W.*, v. *Hardee*, 188 Ark. 542, 66 S. W. 2d 648.

Applying these rules, we now proceed to examine the questions and answers which appellant contends required the trial court to direct a verdict in its favor.

The first question and answer is No. 5, as follows: "Have you ever used alcoholic liquors or taken treatment for liquor habit? Have you ever habitually used any drug or medicine, opium, morphine, cocaine or other narcotics? If so, state which, when, to what extent and length of time. A. 'No'."

This question is comprehensive in scope. It is divided into two main headings; one relating to alcoholic liquors and the other relating to the use of drugs, medicines, opium, morphine, etc., with a request for a full explanation. Of course, it is not claimed that the insured was addicted to the use of drugs or narcotics, so that the first part only of the question is material here. Appellant construes this part of the question, however, to constitute two and not one question. Appellant seeks to treat it as if the question were asked: (1) Have you ever used alcoholic liquors, and (2) have you ever been treated for liquor habit?

This court has frequently held that questions propounded in applications for insurance with respect to applicant's use of intoxicating liquor refer to customary or habitual use thereof and not to occasional or exceptional use. *Des Moines Life Insurance Co.* v. *Clay*, 89 Ark. 230,

116 S. W. 232; *Franklin Life Ins. Co.* v. *Galligan,* 71 Ark. 295, 73 S. W. 102, 100 Am. St. Rep. 73; *Metropolitan Life Ins. Co.* v. *Shane,* 98 Ark. 132, 135 S. W. 836; *Knights of Maccabees* v. *Anderson,* 104 Ark. 417, 146 S. W. 1016.

In the case at bar there is, we think, stronger justification for such construction than is found in the facts of any of the cases cited, because here, all in one sentence, we have the question, "Have you ever used alcoholic liquors or taken treatment for liquor habit?" That language when considered together naturally suggests to the mind whether there has been a habitual use of alcoholic liquors to such an extent that applicant had been required to take treatment therefor. Certain it is that the question is not free from ambiguity.

While the evidence shows that insured would take an occasional drink, it cannot be said that the evidence was undisputed that he was an habitual user of intoxicating liquors. Likewise it cannot be said that the proof, if any, that he was treated for the liquor habit was established by undisputed testimony. Neither Dr. Wade nor Dr. Proctor treated him for the liquor habit or for any other ailment. It is true that Dr. Dildy testified that he had from time to time treated him for "sequences" resulting from the use of liquor, but he also testified that he never at any time treated him for alcoholism itself.

Under the circumstances we are not convinced that the falsity of insured's answers to question No. 5 was established by undisputed testimony of such a character that different minds could not reasonably have drawn a contrary conclusion.

The next question and answer relied on by appellant is No. 6, which reads as follows: "6. Have you ever been under observation, care or treatment in any hospital, sanitorium, asylum or similar institution? If so, state which, when, for what length of time. A. Yes, Michael Meagher Hospital, Texarkana, Texas, Operation Hernia, Dr. J. K. Smith."

This question limits the inquiry to observation, care or treatment in a hospital, sanitorium, asylum or similar institution. The insured answered that he had been

treated for hernia in such an institution, and we have found nothing in the record indicating that he was ever at any time in any other similar institution. Of course, the falsity of this answer is not established by evidence of the character which would justify a directed verdict.

The next question and answer relied on by appellant is No. 7, and is as follows: "7. Have you within the past 10 years suffered any mental or bodily disease or infirmity, or have you within that period of time consulted, been attended by or examined by a physician? If so, state which, when and give particulars. A. 'No', except as stated in No. 6."

On first impression one would think that insured was being asked to give a full *resume* of all the mental and bodily diseases or infirmities from which he had suffered during a period of 10 years, and also to give the name and address of any physician whom he had consulted during that time or who had attended or examined him. There was provided on the application blank for applicant's use in answering that question one line approximately 4 inches long. This fact alone would suggest that insurer expected only a statement relating to serious ailments suffered during that period. Many cases may be found among the decisions of this court holding that questions propounded to applicants for insurance relating to prior ailments were not intended to elicit answers with respect to trivial ailments. *N. Y. Life Ins. Co.* v. *Parker*, 188 Ark. 39; 64 S. W. 2d 556; *Brotherhood of Ry. Trainmen* v. *Long*, 186 Ark. 320, 53 S. W. 2d 433; *Des Moines Life Ins. Co.* v. *Clay*, 89 Ark. 230, 116 S. W. 232; *Franklin Life Ins. Co.* v. *Galligan, supra.*

Of course, each of these cases rested upon its own particular facts and is not necessarily a precedent for a similar holding in the case at bar. It is clear, however, that appellant did not regard this question as being comprehensive in its scope. It is true that during this 10 year period insured consulted and was examined by Dr. Dildy and Dr. Proctor, and was also treated by Dr. Dildy. Appellant now contends that the mere failure of insured to disclose these facts entitled it to a directed verdict

under the authority of *Woodmen of the World* v. *Brown*, 194 Ark. 219, 106 S. W. 2d 591.

In its answer filed herein appellant, after setting forth questions and answers nos. 6 and 7, states: "Defendant states that the answers to said questions made by said Clyde M. Reese in said application to questions No. 6 and No. 7 are false and untrue; that in truth and in fact the said applicant had suffered of bodily disease of chronic alcoholism during said time and was so suffering at the time and had consulted and been treated by Dr. E. V. Dildy, Dr. J. M. Proctor for said disease and other diseases incident thereto. That such false answers constitute a breach of the warranty of the said application that such answers would be true and if not true there should be no liability of the Society for the benefits of said certificate, and that it should be null and void."

Appellant by its answer has limited the inquiry with respect to the falsity of the answers to questions No. 6 and No. 7 to matters relating to treatment for the disease of chronic alcoholism given to the insured by Dr. Dildy and Dr. Proctor. Both Dr. Dildy and Dr. Proctor state that they had at no time treated the insured for chronic alcoholism. Under the circumstances the falsity of the answers to questions 6 and 7 (as the same are limited in scope by the answer of appellant) are not established by undisputed evidence of the character required.

Appellant contends that the court erred in giving appellee's requested instruction No. 1, which is as follows: "You are instructed that in answer to the question contained in the application for the policy, 'Have you within the past ten years suffered a mental or bodily disease or infirmity, or have you within that period of time consulted, been attended, or examined by a physician? If so, state which, when and give full particulars.' The insured, Clyde M. Reese, was only required to give the names of physicians, if any, he may have consulted, been attended or examined by for some serious mental or bodily disease or infirmity, and the insured, Clyde M. Reese, was under no obligation or duty to give the names of physicians he consulted for any minor or trivial disease or infirmity."

For reasons heretofore discussed under another phase of this case, we are of the opinion that the instruction was correct. *Franklin Life Ins. Co.* v. *Galligan, supra; Des Moines Life Ins. Co.* v. *Clay, supra; Brotherhood of Ry. Trainmen* v. *Long, supra; Woodmen of the World Life Ins. Society* v. *Sanders,* 201 Ark. 478, 145 S. W. 2d 28; *N. Y. Life Ins. Co.* v. *Parker, supra.*

Appellant contends that the trial court erred in giving appellees' instruction No. 2 as modified: "You are instructed that the word 'use' in the question relative to intoxicating liquors means habitual or customary use and not occasional or exceptional use thereof."

It is also contended by appellant that the court erred in giving appellees' instruction No. 4, which reads as follows: "You are instructed that the term 'habit' of a person contemplates a course of conduct which is customary and shows that the person has acquired a tendency to pursue that course of conduct over frequent repetitions of same acts and does not contemplate occasional or exceptional acts."

These instructions conform to the view of the law heretofore expressed in this opinion under the discussion relating to the action of the trial court in refusing to direct a verdict. These instructions are in accordance with the pronouncements of the court in the case of *Metropolitan Life Ins. Co.* v. *Shane, supra; Knights of Maccabees* v. *Anderson, supra; Franklin Life Ins. Co.* v. *Galligan, supra; Des Moines Life Ins. Co.* v. *Clay, supra.*

Finding no error, the judgment is affirmed.