## PEEBLES v. EMINENT HOUSEHOLD OF COLUMBIAN WOODMEN.

### Opinion delivered February 16, 1914.

1. APPEAL AND ERROR—TIME FOR FILING BILL OF EXCEPTIONS.—Where time is allowed by the trial judge for filing a bill of exceptions beyond the term for a given number of days, the rule for computing the period allowed is the same as that of any other statute of limitations, and it excludes the day on which the order granting the time is made, and includes the last day, and where, on the 27th of May, the court made an order allowing plaintiff thirty days within which to file his bill of exceptions, the same is filed on time, if filed on June 26. (Page 442.)

2. CONFLICT OF LAWS—CONTRACTS—GOVERNED BY WHAT LAW.—A policy of benefit insurance, although made with a foreign corporation, and required to be approved by it at its home office is governed by the laws of Arkansas, where it became binding when delivered to the applicant in this State. (Page 442.)

3. PRINCIPAL AND AGENT—KNOWLEDGE OF AGENT.—The principal is charged with notice of all that his agent knows in the line of the agent's duty or within the scope of his power. (Page 443.)

4.  INSURANCE—WAIVER OF CONDITIONS BY AGENT.—Where an insurance company required a certain officer to deliver its policies to the insured, to take insured's receipt therefor and certify that insured was in good health at the time of delivery, *held*, where an agent delivered a policy to an insured with knowledge of an injury received by the latter, that the company will be charged with its agent's knowledge of the facts, and will be estopped, in the absence of fraud, to declare the policy forfeited. (Page 443.)

5.  INSURANCE COMPANIES—RELATION OF COMPANY AND ITS AGENTS—ACTS OF ITS AGENTS.—For the reason that an insurance corporation can only act through its officers and agents, the company and its officers and agents are, in law, one and the same as to all transactions within the scope of the authority of its officers and agents. (Page 447.)

6.  INSURANCE COMPANIES—KNOWLEDGE OF AGENT.—The knowledge acquired by the agent of an insurance company, while in the discharge of his duties, as to matters within the scope of his agency, will be imputed to the principal. (Page 447.)

Appeal from Jefferson Circuit Court; *Antonio B. Grace,* Judge; reversed.

### STATEMENT BY THE COURT.

Samuel W. Peebles brought this suit against the Eminent Household of Columbian Woodmen to recover on a benefit certificate issued to him. The latter is a fraternal insurance society organized under the laws of the State of Georgia, with its head office in the city of Atlanta, and its governing body is called the "Eminent Council." The membership of the association is organized into local lodges, which are governed by the Eminent Council. The funds from which the benefit certificates are paid are accumulated by assessments levied by the Eminent Council and collected by the Worthy Clerk of the local lodges.

In 1907 the association sent J. W. Phillips, as its representative, to the State of Arkansas for the purpose of organizing subordinate lodges. He was called "General Consul," and came to Pine Bluff and organized a lodge there in June, 1907. A. B. Smith was elected Worthy Clerk at the organization of the lodge, and has continued to fill such office ever since. Samuel W. Peebles became a member of the local lodge. He made application for a

beneficiary covenant, or policy of insurance, in the association. He was examined by a physician, and his application was forwarded to the Eminent Council at Atlanta. His application was approved there on June 7, 1907, and the beneficiary covenant, or policy of insurance, was sent to Pine Bluff to be delivered to him. The by-laws of the association provide that neither the Worthy Clerk nor the subordinate lodge shall have power to waive any of the by-laws or rules of the association. They further provide that after the beneficiary covenant issued by the Eminent Council is sent to the local lodge for delivery, it must be countersigned by the Worthy Clerk of the local lodge before it is actually delivered to the insured. The by-laws further provide that the beneficiary covenant must have been delivered to the insured while in good health, and the latter must have signed, on delivery of said covenant, an acceptance of the same and a statement of good health at the time, together with the acceptance of the conditions recited on the face of the covenant as well as the provisions of the constitution and by-laws governing the association.

Samuel W. Peebles testified that on the 10th day of June, 1907, he met J. W. Phillips on the streets of the city of Pine Bluff and signed his acceptance of the beneficiary covenant and delivered the same to Phillips. That he paid the dues and assessments required of him, and was in good health at the time he signed the acceptance of the covenant. That Phillips told him that the covenant was at his office; that he was compelled to leave town for a few days, and would deliver the covenant to the insured on his return.

On the 24th day of June, 1907, Samuel W. Peebles was injured while in the employment of a railroad company, and was confined to his bed for some time thereafter as the result of his injuries. The insured's spine was injured, but after being confined to his bed for some time he was able to walk on crutches, and got up and went back to work for the railroad company. About the middle of February, 1909, he received a second injury

to his spine, which permanently disabled him. The beneficiary covenant, in addition to life insurance, provided for the payment of a certain amount to the insured in case of total disability caused by permanent injuries. After the insured was permanently disabled, he applied to the company for the benefits accruing to him under his policy, and the company refused to pay him on the ground that the policy was not delivered to him while in good health, and, therefore, never had any binding force or effect. From the time that the plaintiff was received into the local lodge until the company refused to pay him, he continued to pay the dues and assessments levied on him under his policy of insurance, and the association received the same.

For the defendant, A. B. Smith testified: When the local lodge was organized at Pine Bluff, I was chosen as secretary, and have remained in that position to this time. The plaintiff, Samuel W. Peebles, was injured in the latter part of June, 1907, but after he received his injuries, J. W. Phillips, the General Consul, and myself went to visit him at his house. The plaintiff at the time was in bed and signed the following acceptance, which was attached to his beneficiary covenant:

"The Worthy Clerk of Pine Bluff Household No. 69, city of Pine Bluff, State of Arkansas, will witness the signature and detachment of this warranty, and return the same at once to the Eminent Clerk. I, Samuel Wilson Peebles, the guest to whom the attached covenant was issued, hereby accept this covenant No. 1512, and agree to all its conditions, and warrant all statements in my application for this covenant and made to the doctor examining me to be true, and I further state and warrant to be true that I have not been ill since said examination, and that I am now in good health; and further that I sign this acceptance, agreement and warranty in the presence of the Worthy Clerk of Pine Bluff Household No. 69, of the city of Pine Bluff, State of Arkansas, on

the 10th day of June, 1907, and I detach the same from the covenant hereto accepted.

"S. W. Peebles, Worthy Guest.

Witness: "A. B. Smith, Worthy Clerk."

The acceptance was dated the 10th day of June, 1907, but that is not its true date. It was dated back to cover a period of time before the plaintiff received his first injury. The acceptance was detached from the covenant and sent in to the head office of the company at Atlanta, Georgia, and the beneficiary covenant was delivered to the plaintiff. After the plaintiff received his second injury, and it was ascertained that he was permanently disabled, I wrote to the company the circumstances under which the acceptance was signed by him, as stated above, and the association refused to pay the plaintiff.

It was admitted that J. W. Phillips, if present, would testify that the acceptance of the covenant was not signed by the plaintiff on the streets of Pine Bluff previous to the delivery of the policy of insurance, but was signed and detached from the covenant in the presence of the said J. W. Phillips, and A. B. Smith, at the house of the plaintiff after he had received an injury at the railway shops.

The court directed a verdict for the defendant, and the case is here on appeal.

*Coleman & Gantt,* for appellant.

The contract in this case was completed when appellant signed the required acceptance, and paid the first installment of dues to the authorized agent of appellee, and it was immaterial that the policy was not actually delivered to him until a later date or until after his injury. 76 Ark. 180; 97 Ark. 229; 89 Ark. 471; 85 Ark. 169. Benefit certificates may become binding, although never actually delivered. 1 Bacon, Benefit Societies, section 273-a; 40 N. W. 545; 87 N. W. 903.

The policy of insurance in this case was delivered by the local officer of appellee at a time when he knew of the condition of appellant and the knowledge of such agent was the knowledge of appellee. 52 Ark. 11; 71

Ark. 242.   This doctrine applies in cases of benefit socie-
ties.   156 S. W. 192-195; 119 Iowa 519, 93 N. W. 508;
132 Iowa 513, 109 N. W. 1099, 7 L. R. A. (N. S.) 569, 11
Ann. Cas. 533.

Appellee is estopped to claim, after a lapse of two
years, that the policy is void for misrepresentation.   71
Ark. 295; 156 S. W. 292; 104 Ark. 538.

The stipulation in the by-laws of appellee that the
clerk of the local camp shall be the agent of the local
camp, and not the agent of the head camp, can not relieve
the appellee from the consequences ordinarily following
knowledge on the part of such local camp, which is the
knowledge of the head camp.   177 U. S. 260; 20 Sup. Ct.
611, 44 L. Ed. 762; 17 Hun. (N. Y.) 95; 44 Wis. 369; 96
Mo. App. 14, 69 S. W. 662; 128 Mich. 660, 87 N. W. 903;
13 Wall. 222, 20 L. Ed. 617; 71 Iowa 689, 27 N. W. 770;
72 Iowa 262, 33 N. W. 663; 66 Kan. 538, 77 Pac. 239;
Cooley's Briefs 2373; 76 Neb. 387; 107 N. W. 756; 135
N. W. 67; 113 N. W. 231; 121 Pac. 949; 147 S. W. 882;
120 Pac. 531; 127 N. W. 869; 129 N. W. 984; 89 Pac. 661;
108 Pac. 1048; 110 Pac. 680; 93 N. W. 508; 20 Cyc. 187.

*Taylor, Jones & Taylor,* for appellee; *Dorsey, Brew-
ster, Howell & Heyman,* of counsel.

The covenant and by-laws required actual manual
delivery of policy to insured while in good health and the
signing of the acceptance and warranty of good health be-
fore the policy became in force.   Where there are actual
formalities prescribed by the by-laws, these ordinarily
must be observed.   Bacon on Benefit Societies, § 135; 80
Ark. 422; 81 Ark. 512; 104 Ark. 538; 98 Ark. 421; 105
Ark. 140.

When the time of actual delivery of the policy is
shown to be at a later date than it is contended the con-
structive delivery was made, the burden of showing such
constructive delivery is on the plaintiff.   25 Cyc. 926.

The contract was not complete until the actual de-
livery in accordance with the terms of the policy.   25 Cyc.
716, 717.

Delivery should be made by the person authorized in the policy to do so. 80 Ark. 422; 98 Ark. 166.

The assured, under a fraternal insurance contract, is conclusively presumed to know the constitution, by-laws, rules, etc., of the association. Cases *supra.*

The doctrine of estoppel does not enter into this case.

The officers of the society in delivering the policy assumed, without authority, to waive essential requirements of the by-laws which can not be done. Bacon on Benefit Societies, § 81; Niblack on Benefit Societies, ¶ 18; 113 Mo. App. 19, 87 S. W. 530; 44 Tex. Civ. App. 557, 99 S. W. 1140; 117 Fed. 369, 89 N. W. 6; 130 S. W. 838 (Texas); 118 S. W. 493 (Kansas); 112 Va. 678; 73 S. E. 704; 12 N. J. Eq. 333; 6 Gray 169; 66 Am. Dec. 410; 14 Gray 203; 42 N. J. Eq. 459, 7 Atl. 895; 44 N. J. Eq. 224, 10 Atl. 106; 14 Atl. 278; 3 Am. & Eng. Enc. Law (2 ed.), 1069; 4 Allen 116; 9 Allen 329; 152 Mass. 272; 153 Mass. 83; 86 Am. St. Rep. 687; 64 Atl. Rep. 226 (Conn.), 71 S. E. 130 (Ga.); 117 Fed. Rep. 369; 107 N. W. 790 (Neb.); 112 N. W. 1130 (Mich.).

The rule laid down in 104 Ark. 538, applying to insurance corporations, is not applicable to fraternal benefit societies.

HART, J., (after stating the facts). The record recites that the circuit court made an order on the 27th day of May, 1913, allowing the plaintiff thirty days within which to prepare and file his bill of exceptions, and the same was signed by the circuit judge and filed with the clerk on the 26th day of June, 1913.

Counsel for the defendant insists that the bill of exceptions was not filed in time, and relies upon the case of *Roberts & Schaeffer & Co.* v. *Jones,* 82 Ark. 188, in which the court used this language:

"It is obvious that the court meant to fix a definite time, ninety days within which the bill of exceptions should be filed, and that the time began on the day the order was made. We do not think it was reasonably open to any other contention."

It will be noted, however, that the court was considering the question of whether the time given for filing a bill of exceptions began to run from the day the order was made, or from the end of the term, and the court, by language used, decided that it began to run from the day the order was made. The court's attention was not directed to the rule for computing the time. In the subsequent case of *Early & Co.* v. *Maxwell & Co.*, 103 Ark. 569, the precise contention here made was passed upon. The court said:

"Where time is allowed by the trial judge for filing a bill of exceptions beyond the term for a given number of days, the rule for computing the period allowed is the same as that of any other statute of limitations, and it excludes the day on which the order granting the time is made and includes the last day." It follows that the bill of exceptions was filed in time.

The plaintiff became a member of the local lodge of the defendant association at Pine Bluff and applied for a beneficiary covenant, or policy of insurance, therein. According to the constitution and by-laws of the association and the terms of the policy itself, the parties stipulated that the contract should not be binding until delivered to the insured at Pine Bluff, Arkansas, while he was in good health. Therefore, the policy is an Arkansas contract, and is governed by the laws of this State. *Mutual Reserve Fund Life Association* v. *Minehart*, 72 Ark. 630. The by-laws of the association expressly provided that the Worthy Clerk, or other officers of the local lodge, shall not have power to waive any of the conditions or provisions of the policies issued by the association, and, in the case of *Woodmen of the World* v. *Hall*, 104 Ark. 538, the court held that the officers and subordinate lodges of a mutual benefit association have no authority to waive the provisions of its by-laws or any condition of its policy of insurance. That, however, is not the issue raised by the appeal. The question is: Was the knowledge of the Worthy Clerk as to the physical condition of the plaintiff at the time the policy was delivered to him,

and his acceptance thereof signed by him the knowledge of the association, and, if so, could the company, after having received knowledge and information of matters that would render the beneficiary covenant, or policy of insurance, of no binding effect, continue to demand and accept payment of dues and assessments from the insured for a period of two years, and still rely on its defense that the policy never had any binding force or effect; or will it be estopped under such circumstances from relying on such defense?

The general rule applicable to the relation of principal and agent is that the principal is charged with notice of all his agent knows in the line of his duty or within the scope of his power. *Whitehead* v. *Wells,* 29 Ark. 99. In the application of this familiar principle, a fire insurance agent whose duty is to solicit applications for insurance, to forward such applications to the insurer for acceptance, and to collect the premiums, has been held by this court such an agent that knowledge as to matters affecting the risk or condition of the policy acquired by him while performing such duties will be imputed to the insurance company. *People's Fire Insurance Company* v. *Goyne,* 79 Ark. 315, and cases cited; *Merchants Fire Insurance Company* v. *McAdams,* 88 Ark. 550. The doctrine was also applied to ordinary life insurance policies in the case of *Franklin Life Insurance Company* v. *Galligan,* 71 Ark. 295, where it was held that knowledge on the part of an examining physician of a life insurance company that the answers written down by him in an application for a policy are false was the knowledge of the insurance company, and an estoppel on the part of the company to forfeit a policy was based thereon. So, too, the doctrine was recognized in a fraternal life insurance company in the case of *Sovereign Camp Woodmen of the World* v. *Hall,* 104 Ark. 538, but was not applied in that case, because, under the facts, the knowledge was not acquired by the agent while acting within the scope of his authority. There, the insured sought to invoke the doctrine of estoppel against a fraternal insurance

company because of knowledge by the examining physician of the falsity of the answers of an applicant as to his occupation, and the court held there was no estoppel because the physician was only the insurer's agent with respect to matters pertaining to the medical examination. The court, however, recognized and reaffirmed the rule of our previous decisions that where an agent is acting for his principal and within the scope of his authority, notice to the agent of matters that would affect his principal is binding on the latter. In that case the court said that it is well settled by the weight of authority that the officers and subordinate lodges of a mutual benefit association have no authority to waive the provisions of its by-laws and constitution which relate to the substance of the contract between the applicant and the association. The court also said, however, that the relation of the subordinate lodges to the supreme body of a benefit society is regarded in some transactions as that of agency, and that the general rules of agency in such matters apply to agents of all kinds of insurance companies—mutual benefit associations as well as stock companies.

In the case of *Trotter* v. *Grand Lodge of Iowa, Legion of Honor*, 132 Iowa 513, 11 Am. & Eng. Ann. Cases, 533, the court held that the officers and subordinate lodges of a mutual benefit association are to be considered the agents of the governing body as to all matters entrusted to them as such agents, and several authorities are cited in support of the position. The court further said that this agency is subject to the operation of the ordinary rules applicable to agencies of the same general character in the business of ordinary life insurance companies, and authorities are cited in support of that position. The court also held that the doctrine of estoppel may exist in a matter of a mutual benefit association as well as in matters of ordinary life insurance, and said that while there were some cases to the contrary, this doctrine finds support in the weight of the adjudicated cases.

According to the testimony of the defendant, the plaintiff was examined by a physician at the time he

made his application for insurance, and his state of health, as set forth in that examination, proved to be satisfactory to the governing body, and his policy of insurance was issued subject to the condition that he remain in good health until the policy was actually delivered to him. This was a condition placed in the policy for the benefit of the insurance association, and in the application of the principles above announced might be waived by it just as any other condition in the policy might be waived. By the terms of the policy itself, as well as by the by-laws of the association, it was stipulated that the contract of insurance should not be binding on the insurance association until it was actually delivered by the Worthy Clerk of the local lodge to the insured while the latter was in good health. As a further precaution, it was stipulated that the acceptance should be attached to the policy of insurance, and should be signed by the insured in the presence of the Worthy Clerk, and then detached from the policy of insurance, and at the same time the policy of insurance, when countersigned by the clerk, was to be delivered to the insured. The defendant thus made the Worthy Clerk of its local lodge its agent to ascertain whether or not the insured was in good health at the time the policy was actually delivered to him. The fact that it was required to be delivered in the presence of the Worthy Clerk when countersigned by him shows that he was entrusted with the duty of personally knowing whether the insured was in good health at the time of the delivery of the policy of insurance. Thus it will be seen that the Worthy Clerk of the local lodge was not only made the agent of the association for the purpose of delivering the policy of insurance, but was charged with the duty of ascertaining whether the policy ought to be delivered, and ought to take effect. See *Lee* v. *Prudential Life Ins. Co.,* 203 Mass. 299, 17 Am. & Eng. Ann. Cases 236. The local clerk having been entrusted with the duty of delivering the policy to the insured while the latter was in good health, and the evidence showing that the Worthy Clerk did deliver the policy to the insured,

and that he knew the state of his health at the time that he did so, in the absence of fraud and collusion between the Worthy Clerk and the assured, a jury would have been warranted in finding that the governing body was chargeable with the knowledge acquired by its Worthy Clerk in the delivery of the policy, and that with a knowledge of his physical condition, by receiving his monthly dues and assessments for a period of two years thereafter, elected to treat his insurance as being in force, and that it is therefore estopped from now declaring that the insurance was never in force because the insured had not complied with the condition imposed by the covenant, or policy. As stated in the case of *Masonic Life Association* v. *Lizzie P. Robinson,* 149 Ky. 80, 41 L. R. A. (N. S.) 505, when an insurance company has information of facts that would avoid a policy of insurance, in justice to the insured and in the honest conduct of its business, it ought to at once notify the insured of the facts in its possession and advise him that his policy is cancelled, or take such action as may be necessary and proper to inform the insured of the condition of his policy and his relation to the company. The court further said that it would be manifestly unfair to permit an insurance company, with full possession of facts that it intended to rely on to defeat the collection of the policy whenever it matured, to continue to demand and receive from the insured premiums, as if his policy was a valid and binding contract that it intended to perform when the time of performance came. Many authorities are cited by the court in support of this position. See, also, *Independent Order of Foresters* v. *Cunningham,* 156 S. W. (Tenn.) 192; *Thomas* v. *Modern Brotherhood of America,* 127 N. W. 572; *Pringle* v. *Modern Woodmen,* 76 Neb. 384, 107 N. W. 756.

It follows that the court erred in directing a verdict for the defendant, and for that error the judgment will be reversed and the cause remanded for a new trial.

## ON REHEARING.

HART, J. For the reason that an insurance corporation can only act through its officers and

agents, the company and its officers and agents are, in law, one and the same as to all transactions within the scope of the authority of its officers and agents. Therefore, it has been generally held in this State that the knowledge acquired by the agent while in the discharge of his duties as to matters within the scope of his agency, will be imputed to the principal. The reason that notice to an agent is notice to his principal is because it is the agent's duty to give the principal notice of the facts, and it will be presumed that he has done so. This is true whenever the notice is connected with the subject matter of the agency. Cooley's Briefs on the Law of Insurance, vol. 3, p. 2519. In the instant case, the constitution and by-laws, provided that the beneficiary covenant, after it was issued by the Eminent Council, should be sent to the clerk of the subordinate lodge of which the applicant was a member, and countersigned by such clerk, and then delivered by him to the applicant while the latter was in good health. The applicant was required to sign a receipt attached to the beneficiary covenant that he accepted the same; that he stated and warranted to be true that he had not been ill since his medical examination for the insurance policy and he is in good health at the time he receives the policy, and that he detaches the receipt from the covenant accepted. This is required to be signed by the applicant in the presence of the clerk of the subordinate lodge and is required to be attested by such clerk. Thus it will be seen that every precaution is taken to insure that the policy will be delivered in person by the clerk, and the clerk of the subordinate lodge is made the agent of the supreme lodge for delivery of the policy, and is charged with the duty of delivering the same while the insured is in good health. That is to say, he is charged with the duty of ascertaining whether or not the insured is in good health before he delivers the policy. Therefore, knowledge coming to the local clerk while performing this duty is chargeable to the supreme lodge or Eminent Council. But counsel for the insurance company say that the local clerk testified that at the time he de-

livered the policy, it was not thought that the insured was seriously hurt, and that his testimony in this respect is undisputed. Therefore, they claim that the company was not chargeable with notice that he was severely or seriously injured. At the time the local clerk visited the assured and delivered the policy to him, the latter was in bed, and this fact is admitted by the local clerk. The insured was injured in his spine on June 24, 1907, while at work at the Cotton Belt Railroad shops, by falling backward and striking his back on a piece of timber. He was carried home and lay helpless in his bed for some time. When he was able to get up, he had to walk with two crutches and could scarcely walk with them. He continued to walk with crutches until he was injured the second time in February, 1909. From this testimony, the jury might have inferred that he was lying in the bed perfectly helpless when the local clerk visited him and delivered to him the policy; and that under the circumstances, the serious nature of his injury was open to observation, and was observed by the local clerk, consequently, the jury would have been justified in believing that under the attendant circumstances, the local clerk did know the insured was severely or seriously injured, although he testified that it was not thought that insured was seriously hurt. Therefore, we adhere to our original opinion that the jury was warranted in finding that the insurance company was chargeable with notice that the insured was seriously injured when the local clerk delivered the policy to him. We also adhere to our original opinion on the question of waiver or estoppel on the part of the insurance company. Of course, as therein pointed out, if the insured and local clerk, acting together, attempted to deceive the insurance company as to the state of health of the insured, this would be a fraud on the insurance company, and would defeat an action on the policy.

Rehearing denied.