986

## INTERSTATE FIRE INSURANCE COMPANY
## of Chattanooga, Tennessee *v.* Willie
## L. INGRAM

74-94                                         511 S.W. 2d 471

### Opinion delivered July 15, 1974

*Gaughan, Barnes, Roberts, Harrell & Laney*, for appellant.

*Streett, Plunkett, Faulkner, P.A.*, for appellee.

J. FRED JONES, Justice. This is an appeal by Interstate Fire Insurance Company from a circuit court judgment based on a jury verdict in favor of Willie L. Ingram on two fire insurance policies. One of the policies was on a residential building in the amount of $3,000 and the other one was on the contents in the amount of $3,500. The judgment was for the full amount of $3,000 on the building and for $2,060 on the contents. The appellee Ingram was also awarded statutory penalty in the amount of $607.20, attorney's fee in the amount of $1,500 and costs in the amount of $24.20. Ingram also purchased insurance coverage on a garage apartment not involved in this case.

Interstate contends for reversal that the trial court erred in failing to give defendant's requested instructions 8, 9, 10 and 11, and that the trial court erred in giving plaintiff's instruction No. 7. It also contends that the jury's verdict in favor of Ingram on the defense of arson is not supported by substantial evidence.

The background facts appear as follows: The appellee Willie L. Ingram purchased the property here involved on October 18, 1971, for the sum of $5,620. When Ingram purchased the property, he assumed payments on a mortgage indebtedness to a federal savings and loan association and there was already fire insurance on the property in the amount of $6,000. When Ingram first purchased the property he was living alone, but his divorced daughter and her two children moved into the house with him in the latter part of November, 1971. Mr. Ingram purchased the insurance through a friend, Roy Bryant, who had just started selling insurance for Interstate, and Mr. Bryant's supervisor Leroy Latner actually took Ingram's application and caused the policies to be issued. The policies were issued on December 6 and 20, 1971, and the house and contents were totally destroyed by fire on February 11, 1972, while both policies were in force. The fire was the result of arson in which one of the arsonists died in the house and the other one escaped with his clothing on fire.

In his applications for insurance, which were signed by the appellee but filled out by the company's agent Mr. Leroy Latner, the following questions were asked:

"Item 6. Has applicant ever had a fire loss payment from any company?
Item 11. Is there a mortgage or loan on the building?
Item 12. If this policy is issued, will the building be insured by any other policy?."

On both applications these three questions were answered in the negative by check marks in the box space for a "yes" or "no" answer at the end of the question. At the trial Ingram admitted that he had previously received $13,000 in insurance proceeds; that his dwelling was mortgaged to First

Federal Savings and Loan in Camden, and that the building was insured for $6,000 under a fire insurance policy issued by Home Insurance Company.

The appellant Interstate denied liability on the theory that by giving false answers to the questions on the applications, Ingram intentionally misrepresented material facts in order to obtain insurance coverage. Ingram, on the other hand, denied ever having given false information to appellant's agent and took the position that agent Latner inaccurately recorded the true answers given to him by Ingram.

Both insurance policies contained the following language:

> "Total insurance (does not apply to any of the perils named in the Extended Coverage)—Other insurance is prohibited unless the total amount of insurance, including the amount of this policy, is inserted in the blanks provided on the first page of this policy under the Caption Total Insurance. This company shall not be liable for loss while the insured shall have other insurance prohibited by this policy.

> Concealment, fraud. This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in any case of fraud or false swearing by the insured relating thereto. This policy contains the entire agreement between the Company and the Insured and the holder and owner hereof. * * * Its terms cannot be changed nor its conditions varied except by a written agreement signed by an Authorized Officer of the Company. No other person shall have power to make or alter this contract or waive forfeitures."

The appellant insurance company pled these policy provisions as an affirmative defense in its amended answer.

Turning now to the assignments of error, the defendant's requested instruction No. 8 was as follows:

> "You are instructed that the plaintiff admits that he had another insurance policy insuring this building against loss by fire which was in violation of the provisions of the building policy and your verdict shall be for the defendant on the building insurance policy."

The effect of this instruction would have been to direct a verdict for Interstate and we are of the opinion that Interstate was not entitled to a directed verdict under the evidence in this case. Defendant's requested instruction No. 9 would also have directed a verdict for Interstate unless the jury found that notice of other insurance was given to a general agent with authority to waive policy provisions. Instructions Nos. 10 and 11 had to do with a general agent's authority to waive provisions of an insurance policy and with burden of proof as to general agents.

We are of the opinion that the trial court did not err in refusing defendant's instructions Nos. 8, 9, 10 and 11. We are also of the opinion that the trial court did not err in giving plaintiff's instruction No. 7 which was given as follows:

> "You are instructed that where facts have been truthfully stated to an agent of an insurance company, but by the agent's fraud, negligence, or mistake the facts are misstated in the application, the company cannot after accepting the premium and issuing the policy, set up such misstatements in the application in avoidance of its liability, where the agent is acting within his real or apparent authority and there is no fraud or collusion upon the part of the insured."

The appellee, Willie L. Ingram, testified that the questionnaire on the application forms was filled out by the agent, and that he truthfully answered all the quesiions propounded to him by the agent. He said he did not definitely remember signing his name to the applications, but he admitted the genuineness of his signature on the applications.

Agent Roy Bryant testified that he had gone to work as a soliciting agent for Interstate but did not know how to write a policy when Mr. Ingram obtained his insurance, so he requested his immediate supervisor, Leroy Latner, to go with

him to actually take Ingram's application for the insurance. He testified that he does not recall Mr. Ingram telling him that he had other insurance on either his building or its contents, or that it was mortgaged, or that he had ever had any previous fire losses. He testified that he was only an employee of Interstate for approximately three months, and that Leroy Latner filled out Ingram's applications. He said he does not remember whether the specific questions appearing on the application forms were asked or not, and does not know whether Mr. Ingram read the application before he signed it.

Mr. Latner testified that he went with Mr. Bryant to Ingram's home to take his application for insurance. He said he filled in the insurance application blanks, and that Mr. Ingram signed the applications in his presence. He said he did ask Mr. Ingram each question appearing on the front of the application forms and that he checked the answers as they were given to him by Mr. Ingram. He said he was unaware that Mr. Ingram had had two previous fire losses, but was familiar with his company's policy that if one previous fire loss showed on an application, the company would usually issue a policy; but if more than one previous fire loss was shown on the application, the company would refuse to issue a policy until a retail report was run on the applicant. He said that actually a third policy was issued to Mr. Ingram in the amount of $2,100 on his garage apartment. On cross-examination he again stated that he asked Mr. Ingram every question that appeared on the application blanks, and that he filled the answers in according to the information given him by Mr. Ingram.

In the 1943 case of *Southern Nat'l Ins. Co.* v. *Heggie*, 206 Ark. 196, 174 S.W. 2d 931, a suit on a life insurance policy was defended on the ground that the insured had stated in her application that she was in sound health and had no illness in the previous years when in truth she had been suffering from tuberculosis and had been treated for this disease during two previous years. A jury trial in that case resulted in a verdict and judgment in favor of the plaintiff insurance beneficiary. The evidence in that case was to the effect that when the soliciting agent took the application for insurance from Mrs. Heggie, he wrote down the answers himself and had Mrs. Heggie sign the application without reading it and

that when the question as to whether or not she had ever had tuberculosis was asked, the agent was told that she had been afflicted with the disease. He was also told that she had gone to the Booneville Sanatorium in 1939, and there had an examination which disclosed the existence of pulmonary tuberculosis. In the *Heggie* case, as in the case at bar, there was a direct conflict between the testimony of the agent and the witnesses on behalf of the insurance beneficiary. The agent testified that he correctly filled in the answers on the application form as given to him by Mrs. Heggie. In affirming the judgment in the *Heggie* case, we approved an instruction almost identical to the plaintiff's instruction No. 7 in the case at bar and in doing so, we said:

> "It has been frequently held by this court that, where an applicant for insurance makes to the agent of the insurer a full disclosure of the facts inquired about in the application, but the agent fails to write down the answers of the applicant correctly, and the applicant is permitted by the agent to sign the application without reading it or hearing it read, the knowledge of the agent as to the physical condition of the applicant is imputed to the company and, if a policy is issued on such an application, the company is estopped in an action on said policy to set up the falsity of the answers in the application."

See also *Union Life Ins. Co. v. Johnson*, 199 Ark. 241, 133 S.W. 2d 841; *American Nat'l Ins. Co. v. Hale*, 172 Ark. 958, 291 S.W. 2d 82, cited in *Heggie*.

We are of the opinion that the trial court properly submitted the fact issues to the jury under plaintiff's instruction No. 7, and that there was no error in giving that instruction.

As to the allegation of Ingram's participation in the arson by which the building was destroyed, the burden of proof was on the appellant Interstate. It is true the record bears dramatic proof that two out-of-state arsonists burned the house in this case about 9 p.m. on a Friday night by igniting a highly combustible fluid inside the house. The record also indicates that Ingram was shooting dice at a friend's trailer; that his daughter had gone to work and her children were

visiting their father when the fire occurred. There is simply no evidence in the record that Ingram was acquainted with either of the arsonists or that he had anything at all to do with the fire. Certainly there is no evidence of Ingram's knowledge of, or participation in, arson sufficient to overturn a jury verdict.

The judgment is affirmed.