TIME INSURANCE COMPANY *v.* William B. GRAVES, Individually and as Special Administrator of the ESTATE OF Linda GRAVES, Deceased

CA 86-73                                      734 S.W.2d 213

Court of Appeals of Arkansas
En Banc
Substituted Opinion on Rehearing June 24, 1987.*

---

* This case was originally decided February 4, 1987, in an opinion not designated for publication.

274

*Barrett, Wheatley, Smith & Deacon*, for appellant.

*Daggett, Van Dover, Donovan & Cahoon*, by: *Robert J. Donovan*, for appellee.

MELVIN MAYFIELD, Judge. In an unpublished opinion, handed down by a division of this court on February 4, 1987, the judgment of the circuit court was reversed and this case was dismissed. Petition for rehearing was filed, and pursuant to Ark. Stat. Ann. § 22-1211 (Supp. 1985), the court en banc has decided the petition should be granted to the extent that the judgment should be reversed and remanded rather than reversed and dismissed.

## FACTUAL BACKGROUND

This is a suit on an insurance policy. The jury found for the appellee William B. Graves, individually and as Special Administrator of the Estate of Linda Graves, deceased. In appeals from cases tried by a jury, we view the evidence in the

light most favorable to the appellee and, where there is substantial evidence to support the verdict, we do not disturb it. *Duggar v. Arrow Coach Lines, Inc.*, 288 Ark. 522, 707 S.W.2d 316 (1986). In this case, there is evidence in the record from which the jury could find the following facts.

William and Linda Graves operated a retail grocery store in West Memphis, Arkansas. Eddie Lucas was a potato chip salesman who operated a route and serviced the Graves store. Mr. Lucas decided to quit the potato chip business and start selling insurance. He studied "a book on the rules and regulations of the Arkansas laws" and passed a test and obtained a license of some kind. He then became associated with Aubrey Holt who was an agent for the appellant Time Insurance Company. Holt testified that he was a general agent for Time, but his contract provided he was authorized to write and submit applications for insurance to Time and that he was responsible for "asking all questions and correctly recording all answers on applications for insurance and for immediately sending such applications to the Home Office of the Company. . . ."

There was testimony that Mr. Lucas, after he left the potato chip business, tried to sell Time insurance to the Graveses, as well as to other people. Because of his prior business relationship with the Graveses, Mr. Lucas knew that Linda Graves had been operated on for cancer. However, he told her that he could insure her with Time and that this insurance would provide her coverage for her preexisting condition. The Graveses expressed concern about this since they already had insurance, written by Pacific Mutual, which had been paying for Linda's visits to the doctor's office. So, Mr. Lucas took that policy and, after a couple of days, came back and told the Graveses that it would only be a change from one company to another. In response to specific questions, Lucas assured the Graveses that the Time policy would "fully" cover them and would pick up from where the other one left off.

Before either William or Linda Graves would agree to buy the insurance, Linda called her doctor's office, while Lucas was in the Graveses' store, and got a medical assistant to talk to Lucas over the telephone. The assistant testified that she told Lucas that Linda had an operation for removal of a cancer in 1977, and had received favorable reports from regular checkups since then, and

she did not want to see Linda change insurance policies because of her condition. She testified that Lucas said there would be no problem, that Linda could be covered with Time insurance, and that there would be no rider providing that cancer would not be covered.

Both William and Linda Graves testified that Lucas took their application and that Aubrey Holt was not present and that he never talked to either of them about the application. They also testified that they correctly and truthfully answered each question asked by Mr. Lucas, that they signed the application but did not read it, and that they did not read the policy when it was delivered to them. The application, however, is not signed by Eddie Lucas, but by Aubrey Holt, and Holt admitted that Lucas brought the application to him with a portion of it filled out by Lucas. The application is dated March 21, 1981, and contains the following statement immediately over the signature of Holt:

> Each application question was asked by me personally of the applicant(s) and all answers have been accurately recorded. I have witnessed the signing of this application by the applicant(s).

At the trial, Mike Steinhart, Vice-President of Time Insurance Company, and responsible for underwriting and claims of individual insurance policies, testified that Mr. Holt was an agent for the company and that it was the agent's obligation to ask the questions and record the answers on the application in a correct manner.

The application contains two questions which are incorrectly answered in the negative so as to reflect that no person proposed to be insured had suffered from a disorder of the generative organs or undergone surgery within the last ten years. Another question which asked if any person proposed to be insured had been diagnosed or treated for cancer, tumor, cyst, or growth, within the last ten years, was not answered. Holt testified that he received an amendment to the application from the company that contained the question about cancer which had not been answered on the application. The amendment already had the word "no" typed on it and Holt said he got Mr. Graves to sign the amendment when he delivered the policy to Graves. The policy shows that William B. Graves is the insured and the

application shows that Linda is his spouse and is to be insured also. The amendment to the application states that William B. Graves hereby amends "my application" as follows:

Question 17H: Ever had any indication, diagnosis, or treatment of: Cancer, Tumor, Cyst or Growth of any kind? No.

Graves testified that the amendment to the application contained his signature, but he did not remember signing it. He said he recalled signing some statements for Lucas; that he never signed anything for anyone else; that if Lucas asked him to sign some papers about the insurance, he signed them; and that he considered Lucas to be an honorable man. The amendment is addressed to Mr. Graves and contains no reference to Mrs. Graves. We think the jury could find that Mr. Graves' signature on the application did not constitute an untruthful statement as to the preexisting condition of Mrs. Graves.

Graves also testified that he dropped his other insurance when he received the Time policy. The evidence also shows that Time tried to cancel its policy, more than a year after it was issued, because a claim had been filed for Mrs. Graves and the home office of Time learned of her past medical history from her doctor. This suit was then brought to recover for her medical expense. Mrs. Graves died shortly before this case was tried, and her husband was appointed Special Administrator of her estate and made a party to this suit in that capacity. Linda's deposition was taken shortly before her death and a portion of that deposition was read into evidence at trial. The jury returned a verdict in the amount asked for, and the judgment included statutory penalty and attorney's fees.

## ESTOPPEL

The appellant's first point on appeal was that the court should have granted its motion for directed verdict. This contention was based on the proposition that the policy provided that it would pay for medical expenses resulting from sickness "which first manifests itself more than 15 days after this policy is in force." The appellee argued that the appellant was estopped to raise this question of coverage because of the complete disclosure made to Eddie Lucas who failed to correctly record the disclosed

information on the application but specifically assured the Graveses that Time's policy would cover Linda's preexisting condition. In the unpublished opinion of this court, it was held that estoppel did not apply because that doctrine cannot be invoked to extend coverage and thereby bring within coverage of the policy risks not covered by its terms. We are now convinced that opinion was not correct.

■■ Although the rule set out in that opinion is generally applicable, it is not always applicable. 16B Appleman, *Insurance Law and Practice* § 9090, at 590-98 (rev. vol. 1981) states some restrictions upon the general rule as follows:

> An insurer also may, by its actions, waive, or be estopped from claiming, a defense of noncoverage. . . . The insurer clearly may be estopped to take advantage of a policy provision or limitation inserted in the contract for its own benefit which would frustrate the insured's purposes in applying for the insurance. And an insurer which has misled the insured into believing that a particular risk is within the coverage of the insurance contract will not be permitted to use the contract itself to prove the contrary.

The opinion in *National Discount Shoes, Inc.* v. *Royal Globe Insurance Co.*, 424 N.E.2d 1166 (Ill. App. 1981), cites the above section of Appleman's treatise as authority for this statement: "While it has frequently been stated, as an axiom, that coverage can never be extended by waiver and estoppel, in fact such statements are too broad." And in *Harr* v. *Allstate Insurance Company*, 255 A.2d 208 (N.J. 1969), the court discussed this matter extensively and decided to follow the decisions that utilize estoppel to broaden coverage and to bar the defense of noncoverage. The court explained its position as follows:

> These decisions all proceed on the thesis that where an insurer or its agent misrepresents, even though innocently, the coverage of an insurance contract, or the exclusions therefrom, to an insured before or at the inception of the contract, and the insured reasonably relies thereupon to his ultimate detriment, the insurer is estopped to deny coverage after a loss on a risk or from a peril actually not covered by the terms of the policy. The proposition is one of elementary and simple justice. By justifiably relying on the

insurer's superior knowledge, the insured has been prevented from procuring the desired coverage elsewhere. To reject this approach because a new contract is thereby made for the parties would be an unfortunate triumph of form over substance.

255 A.2d at 219. This opinion also quoted the following excerpt from a law review article, written by Professor Clarence Morris, *Waiver and Estoppel in Insurance Policy Litigation*, 105 U. Pa. L. Rev. 925 (1957):

Indexes to the great nineteenth century insurance texts do not list waiver and estoppel. But times have changed. The 1951 third edition of Vance on Insurance enfolds an excellent and important seventy-six page "Waiver & Estoppel" chapter—about a fourteenth of the book's bulk. What has fostered this growth in the last hundred years? My thesis is that waiver and estoppel are two of several guises that cloak the courts' part in changing insurance from a service safely bought only by sophisticated businessmen to a commodity bought with confidence by untrained consumers. Judges, at the urging of policyholders' advocates, have used waiver and estoppel to convert insurance from a custom-made document designed in part by knowing buyers to a brand-name staple sold over the counter by mine-run salesmen to the trusting public.

In *Hully* v. *Aluminum Company of America*, 143 F. Supp. 508 (S.D. Iowa 1956), *aff'd sub nom. Columbia Casualty Co.* v. *Eichleay Corporation*, 245 F.2d 1 (8th Cir. 1957), the court said estoppel "does not operate to create a new insurance contract, but simply to deny legal effect to a provision of the policy contract inserted for the benefit of the insurer." 143 F. Supp. at 513. And in *Crescent Co., Inc.* v. *Insurance Company of North America*, 225 S.E.2d 656 (S.C. 1976), the court said, "The scope of risk under an insurance policy can be extended by estoppel if the insurer has misled the insured into believing the particular risk is within the coverage." *Id.* at 659. The court also said the essential elements of estoppel are: (1) ignorance of the party invoking it of the truth as to the facts in question; (2) representations or conduct of the party estopped which mislead; (3) reliance upon such

representations or conduct; and (4) prejudicial change of position as a result of such reliance." The case of *Pitts* v. *New York Life Insurance Company*, 148 S.E.2d 369 (S.C. 1966), is cited in support of these elements.

■ The cases cited above clearly support the view that estoppel can be used to broaden coverage and to bar the defense of noncoverage. This matter is also the subject of an extensive annotation in 1 A.L.R. 3rd 1139 (1965). That annotation and its 1985 supplement cite cases from at least 12 states supporting the rule that estoppel or waiver is available to bring within the coverage of an insurance policy risks which are not provided for in the policy or which are expressly excluded therefrom. We have concluded that the rule is a good one and should be adopted by us. As appellee's petition for rehearing states, equitable principles have historically been used to promote fair play and prevent wrongful conduct. The doctrine of estoppel *in pais* is available in both law and equity and is not confined to issues of insurance coverage. *See Branch* v. *Standard Title Co.*, 252 Ark. 737, 480 S.W.2d 568 (1972). The Arkansas Supreme Court has recently, for the first time, held that the doctrine may be available against the state. *See Foote's Dixie Dandy* v. *McHenry*, 270 Ark. 816, 607 S.W.2d 323 (1980). We hold, therefore, that the doctrine of estoppel was available for appellee's use in this case, and we turn now to discuss the question of agency in regard to the conduct of Eddie Lucas and Aubrey Holt.

## AGENCY

The appellant contends that Lucas was not its agent and his knowledge and actions were not imputed to it and, since Holt was only a soliciting agent, his knowledge and actions were not imputed to appellant. But in the application of the doctrine of estoppel, we think the law makes appellant responsible for the knowledge and actions of both Lucas and Holt.

■ In *DeSoto Life Insurance Co.* v. *Johnson*, 208 Ark. 795, 800, 187 S.W.2d 883 (1945), the court said:

The majority rule has long been followed by this court. It was reiterated in the recent case of *Southern National Insurance Co.* v. *Heggie*, 206 Ark. 196, 174 S.W.2d 931, where our cases were reviewed and this court

said: "It has been frequently held by this court that, where an applicant for insurance makes to the agent of the insurer a full disclosure of the facts inquired about in the application, but the agent fails to write down the answers of the applicant correctly, and the applicant is permitted by the agent to sign the application without reading it or hearing it read, the knowledge of the agent as to the physical condition of applicant is imputed to the company and, if a policy is issued on such an application, the company is estopped in an action on said policy to set up the falsity of the answers in the application."

In *Interstate Fire Insurance Co.* v. *Ingram*, 256 Ark. 986, 989, 511 S.W.2d 471 (1974), the appellate court said the trial court "did not err" in giving the following jury instruction:

You are instructed that where facts have been truthfully stated to an agent of an insurance company, but by the agent's fraud, negligence, or mistake the facts are misstated in the application, the company cannot after accepting the premium and issuing the policy, set up such misstatements in the application in avoidance of its liability, where the agent is acting within his real or apparent authority and there is no fraud or collusion upon the part of the insured.

And, this court, in *Gilcreast* v. *Providential Life Insurance Co.*, 14 Ark. App. 11, 683 S.W.2d 942 (1985), reversed and remanded a case because the trial court had given an instruction telling the jury that the knowledge of the appellant's previous condition had by the insurance company's soliciting agent could not be imputed to the company. Our opinion relied upon a number of cases and quoted from *Aetna Life Insurance Co.* v. *Routon*, 207 Ark. 132, 179 S.W.2d 862 (1944), where the court said:

"Where the fact is correctly stated by the applicant but a false answer is written into the application by the agent of the company without knowledge or collusion upon the part of the applicant, the company is, according to the generally accepted rule, bound. But on the other hand, if the agent in collusion with the applicant makes the false and fraudulent representations upon which the insurance is obtained, the fraud will vitiate the policy, even though

the agent is acting within the apparent scope of his authority."

The law in the above cases also applies where the agent, in filling out the application, relies upon information obtained from others rather than information from the applicant. The general rule is set out in 7 *Couch on Insurance* 2d § 35.187 (rev. ed. 1985), as follows:

> Where an agent is furnished with a blank application which he is authorized by the insurer to fill out, and he relies, in so doing, upon information obtained from others, rather than upon that obtained from the applicant, and a policy is issued thereon, the insurer cannot avoid liability on such policy, but is bound by its agent's acts, even where the applicant signs the application, provided he is ignorant of the false statements thereon.

This is also the rule in Arkansas. In the early case of *People's Fire Insurance Association of Arkansas* v. *Goyne*, 79 Ark. 315, 96 S.W. 365 (1906), the Arkansas Supreme Court quoted from the United States Supreme Court case of *Insurance Company* v. *Wilkinson*, 13 Wall. 222 (1871), in which that court assumed a factual situation where the soliciting agent obtained no answers from the applicants but "wrote the representation to suit himself." The court said estoppel would apply to prevent the company from taking advantage of that situation. The Arkansas Supreme Court approved of the *Wilkinson* holding and applied it in *Goyne* even though the Arkansas court knew that the United States Supreme Court had already issued another opinion disapproving of part of the language in *Wilkinson*. And in *Maloney* v. *Maryland Casualty Co.*, 113 Ark. 174, 184, 167 S.W. 845 (1914), the Arkansas Supreme Court said:

> Moreover, the undisputed testimony shows that the application was written up by the agent of the insurance company, and that the answers were written by him without consulting the assured. Therefore, the company is chargeable with the knowledge of its own agent, and is also estopped from denying that which its own agent has asserted to be true. See *Peebles* v. *Eminent Household of Columbian Woodmen*, 164 S.W. 296, 111 Ark. 435.

■ Thus, since there is evidence in the present case to support a finding that Lucas filled out the application incorrectly, without Holt ever being present, we think the jury could have found the appellant bound by that application because the evidence will also support a finding that Holt, who had the contractual responsibility for "asking all questions and correctly recording all answers" signed the application relying upon information he received from Lucas and not upon information he received from the Graveses. This fits precisely the general rule from *Couch* and the Arkansas rule in *Goyne* and *Ingram, supra*. We must now, however, apply the estoppel and agency issues to the liability issue in this case.

## ESTOPPEL AND AGENCY APPLIED

■ As we have seen, where the information called for by the application is correctly stated to the soliciting agent but he fills out the application incorrectly, the insurance company is bound by the information on the application unless the applicant knows what the agent wrote or was guilty of fraud or collusion. Since the evidence here would support a finding that the appellant was bound by the information on the application, the Arkansas cases quoted from above clearly show that the incorrect information on the application will not prevent a recovery on the policy. We also think the evidence will support a finding that the appellant is estopped to question Linda Graves' preexisting condition. This will, of course, allow recovery for her medical expenses which were incurred for a condition that first manifested itself more than 15 days after the policy was in force. And this will broaden the coverage of the policy issued by the appellant. But we think, under the particular facts in this case, this is a proper application of the well-established doctrine of estoppel. It is based upon the evidence from which the jury could find (1) that the Graveses, without any fraud or collusion on their part, did not know that Lucas had filled out the application incorrectly, (2) that the issuance and delivery of the policy by appellant misled the Graveses by causing them to believe that the policy was valid and enforceable, (3) that they relied upon the issuance and delivery of the policy, (4) to drop their other policy which was paying for Mrs. Graves' visits to the doctor's office and to pay the premiums on the new policy for more than a year. See the

elements of estoppel listed in the previously cited case of *Crescent Co., Inc.* v. *Insurance Company of North America*, 225 S.E.2d 656 (S.C. 1976).

Our application of the doctrine of estoppel is not based upon the evidence that Lucas assured the Graveses that Time's policy would cover Mrs. Graves' preexisting condition. Although that evidence is relevant, under Arkansas law the promise of coverage is ordinarily not within the scope of a soliciting agent's authority. *Continental Insurance Companies* v. *Stanley*, 263 Ark. 638, 569 S.W.2d 653 (1978). In this case, however, where the jury could find that the appellant is bound by the information contained on the application, the appellant's vice-president testified that the policy would not have been issued if the application had correctly reflected the information given by the Graveses, and the Graveses dropped their other policy and paid the premiums on the Time policy for more than a year, we think there is sufficient evidence to invoke the doctrine of estoppel in order to prevent the appellant from claiming there can be no recovery on the policy for the medical expense sought to be recovered. Although this uses the doctrine of estoppel to extend coverage of the policy, there is precedent for it. To hold otherwise would be, as stated in *Harr* v. *Allstate Insurance Company*, 255 A.2d 208 (N.J. 1969), "an unfortunate triumph of form over substance."

## JURY INSTRUCTIONS

The appellant also contended that this case should have been reversed because two jury instructions given at the request of the appellee should not have been given and one instruction requested by the appellant should have been given.

Instruction No. 14, given at appellee's request read:

> If you find that Holt was furnished with blank applications which he was authorized by Time to fill out and that Holt relied upon information obtained from Lucas in doing so, rather than upon that obtained from the Graves, and a policy is issued thereon, Time cannot avoid liability on such policy, but is bound by the acts of its agent Holt, even where the Graves signed the application provided the Graves are ignorant of the false statements

contained therein.

It is argued by appellant that this instruction was a binding instruction and allowed the jury to find for the appellee solely on the basis that Lucas filled out the blank application furnished by Holt. We think the phrase "cannot avoid liability on such policy" is subject to the vice of which appellant complains.

The appellee relies upon *Mutual Aid Union* v. *Blacknall*, 129 Ark. 450, 196 S.W. 792 (1917), which states that an insurance company is bound by the conduct of its soliciting agent acting within the apparent scope of his authority. Even so, "bound by conduct" is not the same as "cannot avoid liability" on the policy. It is clear from our previous discussion that the appellant is not liable on the policy simply because Lucas wrote false statements in the application which the Graveses did not know of, even if Holt signed the application without obtaining any information from the Graveses. This leaves out the reliance and prejudicial change of position elements of estoppel which must be found before the appellant is liable on the policy. Also, the instruction as offered assumes there are false statements in the application.

We think the court committed prejudicial error in giving Instruction No. 14, and we reverse and remand for that error. In view of a retrial, we point out that we believe Instruction No. 11, given at appellee's request, was argumentative and that which of two innocent parties must suffer for the wrongful act of a third party is not really an issue in the case. Also, appellant's requested Instruction No. 2, which was refused, dealing with the burden of proving that Lucas was acting in the scope of his authority, did not instruct on an issue in the case.

## *OTHER ISSUES*

The point argued by appellant as to the submission of the case against appellant without also submitting, at the same time, the case against Eddie Lucas may not be involved at retrial. At any event, the circumstances are not likely to be similar enough to warrant our prediction on whether the court would abuse its discretion in submitting the case on retrial. We also do not care to give an advisory opinion on the questions raised in appellee's brief as to admissibility on retrial of the amended

application bearing the signature of William Graves or the admissibility of applications completed by Holt for insurance on other persons not parties in this case. We see no evidence of a cross-appeal in the briefs or the record. See *Lou* v. *Smith*, 285 Ark. 249, 685 S.W.2d 809 (1985).

Reversed and remanded.

CRACRAFT, J., concurs.

CORBIN, C.J., and COULSON, J., dissent.