930 F.2d 1337
 32 Fed. R. Evid. Serv. 778
 Bill BARTON and Tom Barton, d/b/a Barton Brothers Farm, Appellants,
v.
COLUMBIA MUTUAL CASUALTY INSURANCE COMPANY, Appellee,
v.
Virgil MOORE; Marlene Moore,
First National Bank of Fayetteville, Arkansas, Intervening Plaintiff.
 No. 90-2096.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 1, 1991.
Decided April 18, 1991.
Rehearing Denied June 5, 1991.
 
 Josua Dara, Fayetteville, Ark., for appellants.
 David Morris, Springdale, Ark., for appellee.
 Before ARNOLD and LOKEN, Circuit Judges, and BRIGHT, Senior Circuit Judge.
 LOKEN, Circuit Judge.
 
 
 1
 Plaintiffs Bill and Tom Barton, d/b/a Barton Brothers Farm (collectively "the Bartons"), brought this action to recover insurance benefits under a multi-peril Farm Policy issued by defendant Columbia Mutual Casualty Insurance Company ("Columbia Mutual") for damages caused by the collapse of a chicken house during a severe storm. Columbia Mutual denied coverage on the grounds that the Policy's coverage for "Windstorm or Hail" expressly excluded this loss because it was "caused directly or indirectly by ... ice (other than hail), snow or sleet, all whether wind-driven or not."
 
 
 2
 Following trial, the jury returned a verdict for Columbia Mutual. The District Court[1] entered an order dismissing the Bartons' complaint in accordance with the jury verdict.[2] The Bartons appeal, contending (1) that the district court erred in admitting into evidence and allowing the jury to use during its deliberations, for purposes of impeachment, a tape recording of a pre-trial interview of a key plaintiffs' witness; (2) that the district court erred in refusing to give a requested instruction defining the Policy term "hail"; and (3) that the district court erred in granting Columbia Mutual's pre-trial motion in limine excluding contemporaneous statements by the insurance agent who sold the Policy as to the scope of coverage. We affirm.
 
 I.
 
 3
 The question of coverage turned on whether the Bartons' chicken house collapsed from wind or hail, which were covered perils, or from the weight of snow and ice, an excluded peril because the Bartons elected not to pay the premium for this additional coverage. Columbia Mutual's expert, a University of Arkansas meteorologist, testified that 3 1/4 inches of water fell in the form of freezing rain and snow during the three day storm; had this water collected on the roof of the 500' by 34' chicken house, it would have weighed 288,000 pounds and "would have it close to collapse or collapsing." He also testified that there was no hail during this storm, and he opined that the north winds prevailing during the storm were not sufficient to blow the chicken house over.
 
 
 4
 The Bartons' primary evidence on these issues was the testimony of their cousin, Jimmy Leon Parsons, the only eye witness who testified. Parsons testified that, on the day in question, he watched the chicken house fall "towards the south" at a time when the wind was blowing 35 miles per hour with gusts up to 50 mph, there was hail the size of marbles, and there was no more than 1/16th inch of snow and ice on the chicken house roof. As this testimony was inconsistent with that of Columbia Mutual's expert, Parsons' credibility was obviously an important issue.
 
 
 5
 During cross examination, counsel for Columbia Mutual sought to impeach Parsons based upon inconsistent statements he made shortly before trial when interviewed by a Columbia Mutual investigator. Parsons denied making some of the alleged statements, whereupon counsel asked the court for permission to play a tape of the interview for the jury. The Bartons' counsel objected, stating "I'd object unless the total tape is entered, and I'd object at that [because] this is the form of testimony here and it's not a deposition." The District Court overruled this objection and admitted the tape into evidence for purposes of impeachment and credibility. (Tr. at 137-138.)
 
 
 6
 Counsel for Columbia Mutual then played the tape for a few minutes, until counsel for the Bartons objected that he could not hear the recording. A few more attempts convinced everyone that the tape recorder was not broadcasting loud enough to be heard in open court. The court then stated:
 
 
 7
 THE COURT: All right. I'm going to allow the tape to be received into evidence. I'm going to allow the jury to listen to it in the jury room, if they wish to, on the question of whether or not the gentleman who just testified told the truth. That's the issue for which it's being received.... [W]e're just not going to waste the time here in the courtroom when nobody is hearing it. It's just a waste of time, but I am going to receive the tape into evidence.
 
 
 8
 Mr. Douglas [counsel for the Bartons], if you wish to have someone--I'm not going to stop the trial. If you wish to have someone, if you haven't heard it before, listen to it, you may do so.
 
 MR. DOUGLAS: I'll redirect. (Tr. at 143.)
 
 9
 At the close of evidence, prior to closing arguments and instructions to the jury, counsel for Columbia Mutual advised that he had brought a better tape player, and the court again stated that the jury would be allowed to play the tape during their deliberations. Once again, counsel for the Bartons did not object to this procedure. (Tr. at 271.)
 
 
 10
 On appeal, the Bartons argue that their fundamental right to a fair trial was violated when the district court admitted into evidence, and allowed the jury to consider during deliberations, an inaudible tape recording that was not played in open court so that counsel for the Bartons could properly conduct his redirect examination of Parsons. However, the absence of timely objection forecloses this issue on appeal. See Powell v. Burns, 763 F.2d 337, 339 (8th Cir.1985). With respect to the tape's audibility, counsel had adequate time between Parsons' testimony and the jury's deliberations to listen to the tape and to make a timely objection on this ground if the tape was inaudible.[3]
 
 
 11
 With respect to the need to play the tape recording in open court during Parsons' testimony, Rule 613(b) of the Federal Rules of Evidence provides that, "Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon." Here, counsel's extensive use of the taped interview during cross examination gave Parsons an opportunity to explain the alleged inconsistencies. The district court then made an effort to have the entire tape played in open court, prior to redirect, but was thwarted by acoustical problems. The court then offered counsel for the Bartons an opportunity to listen to the tape but objected to stopping the trial. Counsel replied, "I'll redirect." Although we think the better practice would have been to recess the trial for 30 minutes to permit counsel to hear the tape, counsel's failure to request this recess or otherwise object to the procedure adopted by the district court forecloses this issue on appeal unless the district court committed "plain error," which we conclude it clearly did not. See Fed.R.Evid. 103.
 
 II.
 
 12
 The Bartons next argue that the District Court erred by excluding their requested jury instruction defining the term "hail" in Columbia Mutual's Policy to include sleet. Although the Policy contained a provision excluding loss caused by "snow or sleet," the evidence at trial included testimony by the Bartons' insurance agent that he told Tom Barton, in a discussion of coverages prior to the Policy issuing, about an Arkansas court decision "that sleet had been determined as hail, small hail." In requesting an instruction consistent with this testimony (despite the plain Policy language to the contrary), counsel for the Bartons relied upon Southall v. Farm Bureau Mut. Ins. Co., 276 Ark. 58, 632 S.W.2d 420, 422 (1982), which held that the jury should have been instructed "that the word 'hail' as used in the policy included sleet."
 
 
 13
 In a conference with counsel prior to instructing the jury, the district court advised that he would not give the requested instruction "because I think the next instruction adequately and correctly instructs the jury" and because the evidence differed in this case and in Southall. The district court then invited counsel "to make any record you wish to in relation to the instructions," and counsel for the Bartons replied, "I have nothing." (Tr. at 265-266.) Again after the instructions were given, the district court invited counsel "to make any record they wish to in regards to the instructions," and again counsel for the Bartons replied, "I don't have any, Your Honor. I've already made my motion on that." (Tr. at 320.)
 
 
 14
 The Bartons' argument on appeal must be rejected for two reasons. First, the point was not properly preserved. This court has consistently interpreted Rule 51 of the Federal Rules of Civil Procedure as requiring a specific objection, before the jury retires, when the district court rejects a requested instruction. See, e.g., Beckman v. Mayo Found., 804 F.2d 435, 438 (8th Cir.1986). The purpose of Rule 51 "is to compel litigants to afford the trial court an opportunity to cure a defective instruction and to prevent litigants from ensuring a new trial in the event of an adverse verdict by covertly relying on the error." Missouri Pac. R.R. v. Star City Gravel Co., 592 F.2d 455, 459 (8th Cir.1979). Here, when the district court stated specific reasons for rejecting the requested instruction, counsel for the Bartons was required by Rule 51 to state his specific objections to the charge.
 
 
 15
 Second, we find no error in the instructions as given. Unlike the policy at issue in Southall,[4] Columbia Mutual's Policy expressly excluded loss from "snow or sleet." Thus, Southall did not mandate the requested instruction. The next instruction referred to by the court clearly instructed the jury that the Bartons could recover for a loss caused by hail, including the weight of ice caused by hail, or for a loss caused by windstorm. Given the conflicting evidence regarding the meaning of the term "hail," the court by this instruction properly left the question of Policy interpretation to the jury.
 
 III.
 
 16
 Finally, the Bartons contend that the District Court erred in granting Columbia Mutual's pre-trial motion in limine, excluding testimony regarding conversations between the Bartons and their insurance agent, Henry Rowe, before the Policy was issued. In opposing the motion before trial, counsel for the Bartons argued that Rowe would testify that he had assured the Bartons on one occasion that extra snow and ice coverage was not necessary because there was coverage "if there was any significant wind," and on another occasion had represented to the Bartons that "snow and sleet--or ice and snow are one in the same thing." The district court granted Columbia Mutual's motion on the ground that the conversations were irrelevant because such representations could not expand the Policy's coverage by estoppel as a matter of law. The Bartons urge on appeal, as they did to the district court, that this ruling conflicts with Arkansas law of estoppel as redefined in Time Ins. Co. v. Graves, 21 Ark.App. 273, 734 S.W.2d 213 (1987) (en banc).
 
 
 17
 We find it unnecessary to reach the estoppel issue for a very basic reason--the testimony in question was all received into evidence during the trial. Counsel for the Bartons called Mr. Rowe as a witness for other reasons and scrupulously avoided the precluded conversations during his direct examination. However, on cross examination, counsel for Columbia Mutual asked Rowe to relate portions of the conversations in question. With the subject now opened, counsel for the Bartons, without objection, elicited the specific testimony referred to in his opposition to the motion in limine, both in the redirect of Rowe and in the cross examination of Tom Barton, who was later called as a witness by Columbia Mutual. Under these circumstances, any error in the district court's pre-trial ruling on the motion in limine was clearly harmless. See Owen v. Patton, 925 F.2d 1111, 1113-14 (8th Cir.1991).
 
 
 18
 Accordingly, we affirm.
 
 
 
 [1]
 The Hon. H. Franklin Waters, Chief Judge, United States District Court for the Western District of Arkansas
 
 
 [2]
 Because the Bartons' Notice of Appeal was filed on July 3, 1990, and recited that they were appealing from a "final judgment" dated May 8, 1990, we have considered our basis for jurisdiction over this appeal. The district court's order of May 8, 1990 dismissed plaintiffs' claims against Columbia Mutual with prejudice, but did not adjudicate all claims involving the other parties to this case and did not contain a Fed.R.Civ.P. 54(b) certification. Thus, it was not properly appealable when entered
 The District Court subsequently denied the Bartons' motion for new trial and then disposed of all remaining claims in a judgment entered on June 18, 1990. As this judgment effectively terminated the controversy, the previously interlocutory May 8th Order dismissing plaintiffs' unrelated claims became appealable at that time. See Aaro, Inc. v. Daewoo Int'l (America) Corp., 755 F.2d 1398, 1400 (11th Cir.1985). Thus, the Bartons' July 3 Notice of Appeal was timely filed, and this Court has jurisdiction under 28 U.S.C. Sec. 1291.
 
 
 [3]
 The jury obviously listened to the tape and found it audible, for during their deliberations they sent a note to the district court asking, "If the jurors discredit Mr. Parsons as a witness--can anything he said on the tape be taken into consideration." Without objection by the Bartons' counsel, the district court properly responded that the tape could only be used in determining Parsons' credibility, not as affirmative evidence. (Tr. at 320-323.) The tape was part of the record on appeal; we have listened to it and find it faint but audible
 
 
 [4]
 The Southall policy excluded coverage for "loss caused directly or indirectly by (a) frost or cold weather or (b) ice (other than hail), snowstorm, waves, tidal wave, high water or overflow, whether driven by wind or not." Southall, 632 S.W.2d at 422